STATE of Minnesota, Respondent,

v.

Kirk Allen CARLSON, Appellant.

No. 47315.

Supreme Court of Minnesota.

March 17, 1978.

---

C. Paul Jones, Public Defender, J. Christopher Cuneo, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Keith M. Brownell, Co. Atty., Peter M. Banovetz, Asst. Co. Atty., Duluth, for respondent.

TODD, Justice.

Defendant was found guilty by a district court jury of a charge of selling marijuana, Minn.St. 152.09, subd. 1(1), and was sentenced by the trial court to a maximum term of 5 years in prison, the sentence to run consecutively to a sentence of defendant for a prior offense. The issue on this appeal from judgment of conviction is whether the trial court erred in denying a motion for mistrial after a prosecution witness testified on cross-examination about suspected prior drug involvement of defendant. We affirm.

The sale in this case occurred on October 21, 1975. That afternoon, Thomas Olby, an undercover officer working for the Cooperative Area Narcotics Squad, went to defendant's apartment in Duluth to make a 1-pound marijuana purchase which an informant had helped arrange. Defendant then accompanied Olby, directing him to the nearby residence of a friend, Gregory Allen, whom Olby had never met. Once there, defendant asked Allen if he had the pound of marijuana, and Allen pointed to a bag in the corner. Defendant then picked up the bag and passed it to Olby, who inspected it. In response to a question of whether the marijuana was homegrown, defendant replied that it was "commercial." Olby and defendant then dickered over the price, defendant asking for $150 but agreeing to take $140. There was also a conversation between Olby and defendant over defendant's ability to supply an additional 7 pounds of marijuana in the future at $100 a pound.

The prosecution witnesses who testified to these facts were Allen, who pleaded guilty to a charge arising out of the incident, and Olby. Allen testified that by himself he had picked several pounds of marijuana in southern Minnesota but that "in a sense" the pound sold to Olby on October 21 belonged to defendant. Explaining, Allen testified that he owed defendant money for motorcycle parts he had bought from defendant and that he had agreed to pay part of this debt by giving defendant half the proceeds of the sale of the pound in question. According to Allen, the more money paid by Olby, the more money defendant would receive that day as payment on the debt. In fact, Allen testified that he gave defendant three-fourths instead of one-half, of the money he had received from Olby.

The only issue on appeal relates to certain testimony by Officer Patrick Alexander, a 10-year veteran of the Duluth Police Department, who had provided Olby with marked bills and had acted as a surveillance officer on October 21. Alexander really did not say much of consequence on direct examination other than that on October 21 he saw Olby go to defendant's residence and a short time later saw him leave for Allen's residence. However, on cross-examination, Alexander, when asked if the police had any information prior to October 21 connecting defendant to marijuana sales, responded by saying:

"I would have to check his file. We have drugs that he was involved in. I don't know if marijuana was one of those particular drugs."

Defense counsel immediately moved for a mistrial, which was denied. Defendant continues to advance this issue on appeal.

We start with the obvious proposition that it would have been improper for the state to intentionally elicit the evidence about the police department having a file on defendant in which there were reports from informers regarding defendant's involvement with other drugs. However, this is not a case of prosecutorial elicitation of potentially prejudicial evidence. Rather, this is a case in which the evidence was elicited by defense counsel during cross-examination of a prosecution witness.

Defendant's contention is that the answer was nonresponsive to the question and that the state should be held responsible for the answer because the witness was a police officer. The state's response is that, while the answer was technically nonresponsive, defense counsel knew what was in the police file and should have been more careful in his cross-examination of the officer. Further, the state argues that any error was cured by the instruction in which the court ordered the testimony stricken and disregarded.

We agree with defendant that the prosecutor has some responsibility for preparing his witnesses in such a way that they will not blurt out anything that might be inadmissible and prejudicial. *State v. Huffstutler,* 269 Minn. 153, 130 N.W.2d 347 (1964). In this case, however, the principal blame for what happened lies with defense counsel, not with the prosecutor. Defense counsel knew what was in the file about which he was questioning the officer, and there was nothing stopping him from taking advance steps to prevent this kind of response. For example, he could have asked to speak with the court out of the jury's presence, explained the problem, and asked the court to instruct the witness in advance to avoid mentioning that defendant had been involved in other drugs. The prosecutor, on the other hand, objected on three separate occasions to defense counsel's line of questioning, as the following excerpt from the transcript reveals:

"Q  *  *  *  [I]f one of your informants tells you that he believes John Smith is selling marijuana, you might start a file on John Smith, correct?

"A  Yes, Sir.

"Q  You might find out where he lives and where he works—

"MR. HANSEN: I'll object, Your Honor, irrelevant, immaterial.

"THE COURT: Overruled, continue.

"Q  (By Mr. Bieter, continuing)  You might start a file on him, is that correct?

"A  Yes, Sir.

"Q  And you would also encourage that informant to find out more information on John Smith, correct?

"A  Yes, Sir.

"Q  And then as your information accumulates, you might, at a later date, try and have your citizen informants, or perhaps undercover police officers, such as Mr. Olby, you might have either one of them try to set up the opportunity to make a purchase from them. Would that be correct?

"A  It's possible.

"Q  Now, at the present time, I imagine, you have quite a few files in the Narcotics Bureau, wouldn't that be correct?

"A  Yes, Sir.

"Q  You are familiar with Greg Allen's case, are you not?

"A  Somewhat.

"Q  Prior to October 21st, did you have a file on Greg Allen?

"A  I'm not sure.

"Q  You didn't check before—

"A  I didn't know his name until several weeks—or several days after the 21st. I think it was in fact at the time of his arrest, which was a couple months later, that we actually found out his last name. And I don't recall in back checking whether we had initiated a file on him previous to knowing him as Greg, not knowing his last name.

"Q  How long would it take you to collect that information?

"A  Telephone call would be the quickest.

"MR. HANSEN: I'll object, Your Honor, as being irrelevant, immaterial to this case.

"MR. BIETER: Judge, the charge is sale. The charge in this case is sale. I do have a point in my cross examination.

"THE COURT: Overruled, you may continue.

"Q (By Mr. Bieter, continuing). All right, Officer Alexander. Prior to October 21st, had you received any information from any informant, either a citizen informant or an undercover police officer informant—had you received any information that the Defendant, Kirk Carlson, was engaged in selling marijuana? Had he made any sales of marijuana prior to October 21st?

"A We have a case file on Mr. Allen, dating back to 1974, involved—

"MR. HANSEN: I'm going to object.

"THE COURT: Not responsive, it will be stricken.

"Q (By Mr. Bieter, continuing) Do you have any information prior to October 21st—did you or the Narcotics Bureau have any information from any informant indicating that Mr. Carlson had sold marijuana?

"A I would have to check his file. We have drugs that he was involved in. I don't know if marijuana was one of those particular drugs."

■ Even if defense counsel should not be blamed for the nonresponsiveness of the answer, it might be argued that he "opened the door" so that the prosecutor on redirect would have been entitled to elicit the testimony about the reports of involvement with other drugs. Defense counsel, by eliciting the evidence that the file contained no reports about defendant selling marijuana, in effect was eliciting character evidence designed to show that defendant was not the type of person who would sell marijuana. In fact, in his closing argument, defense counsel relied on this evidence in arguing that defendant had no criminal intent. Arguably, the court should have sustained the prosecutor's objection to this line of inquiry because usually the only evidence of good character admissible on an accused's behalf is reputation and opinion evidence. See, Rules 404 and 405, Rules of Evidence, and comments thereto. However, the trial court overruled the prosecutor's objection to this evidence, and therefore under Wigmore's theory of "curative admissibility"[1] the prosecutor arguably had a right to refute in a limited way the impression made by the evidence about defendant's character. The fact is, the prosecutor did not try to refute the evidence, but if he had a right to elicit the evidence about other drugs on redirect, it would seem to follow that defendant cannot show prejudice by the blurting out of the evidence on cross-examination.

■ The following factors further support our determination that defendant was not prejudiced by the testimony of Alexander:

(1) Defendant presumably benefited from the admission of evidence about the absence of information that he had been involved previously in marijuana sales.

(2) The trial court gave a cautionary instruction. One might argue that jurors do not pay attention to instructions telling them to ignore evidence of this nature, but one can also reasonably make the opposite argument, that jurors generally are sincere and do make a good faith effort to follow the instructions.

(3) The most potentially prejudicial thing that happened during the trial was defendant's voluntary absence.[2]

---

1. See, 1 Wigmore, Evidence (3 ed.), § 15. See, also, *McNab v. Jeppesen*, 258 Minn. 15, 102 N.W.2d 709 (1960); *State v. DeZeler*, 230 Minn. 39, 41 N.W.2d 313 (1950).

2. In the middle of the state's case, there was a snowstorm, necessitating a 3-day weekend. On Monday, defendant did not show up for the continuation of the trial. Defense counsel stated his opinion that defendant had given up on an acquittal and had either left the state or concealed himself. The court then stated that if defendant was not found by the following day, Tuesday, trial would proceed without defendant, which it did. See, Rule 26.03, subd. 1(2), Rules of Criminal Procedure. On Tuesday, the jury was read the following instruction prepared by defense counsel: "Ladies and Gentlemen of the Jury, it is the Law of the State of Minnesota that in any criminal proceedings the

(4) Substantial evidence of defendant's guilt was presented at trial.

In view of all the circumstances, we hold that the trial court did not err in denying the motion for mistrial.

Affirmed.

Defendant has a right to be present and face all witnesses and be a party to all proceedings.

"It is also the Law of the State of Minnesota that he may waive that right and not be present. It would appear that Mr. Carlson has waived his right to be present at any of the future proceedings.

"Now, because he has done this, I instruct all the Jury not to make any negative inference from the fact that he is not here. You can't consider that as evidence. You can't consider it against him. But I simply explain to you that he is not present and will not be present from here on in. You may resume the trial."

Defendant on appeal does not make an issue of the completion of trial without his presence.