**STATE of Minnesota, Respondent,**

v.

**Christopher Henry McNEIL, Appellant.**

No. C0–02–542.

Court of Appeals of Minnesota.

April 1, 2003.

Mike Hatch, Attorney General, St. Paul, MN, and Doug Johnson, Washington County Attorney, Eric C. Thole, Assistant County Attorney, Jennifer S. Bovitz, Assistant County Attorney, Stillwater, MN, for respondent.

John Stuart, State Public Defender, Davi E. Axelson, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge, WILLIS, Judge, and ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

■ Appellant challenges his conviction of three counts of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subds. 1(a), (g), and (h)(iii) (2000). Appellant contends that numerous instances of prosecutorial misconduct caused him prejudice and denied him his right to a fair trial. The prosecution committed misconduct by failing to adequately prepare witnesses to avoid the mention of suppressed evidence, by asking a direct question eliciting suppressed testimony, by vouching for a witness's credibility, and by making statements in closing arguments aimed at jury sympathy and inviting the jury to compensate the victim. But based on the particular facts of this case, we conclude that in light of the untainted evidence presented by the state these actions did not substantially prejudice the jury and deny the appellant a fair trial. Therefore, we affirm.

## FACTS

The facts of this case are not in dispute on appeal. Appellant began a romantic relationship with T.L.M.'s mother (mother) in the summer of 1993. Approximately two months after he and mother met, appellant moved into the house where mother lived with her son and daughter, T.L.M.

Appellant allegedly began sexually abusing T.L.M., then eight years old, shortly after he moved into the home. In the time period between September 1993 and July 2000, the incidences of abuse took place, in one manner or another, two to three times a week.

T.L.M. first reported the abuse to her mother in the summer of 2000. The police were not immediately contacted because mother wanted T.L.M. to speak first to Jean Hamm, T.L.M.'s therapist. After hearing T.L.M.'s report of abuse, Hamm notified the Oakdale Police Department.

Officer Rolf Hagland was assigned to investigate the allegations of abuse. Hagland asked Lynn Hansen, a child-protection worker for Washington County Community Services, to assist him with his investigation. Hansen interviewed T.L.M. at the Oakdale police department. In this interview, T.L.M. recounted the incidences of abuse. T.L.M. also stated that appellant had a scar on his back related to a congenital condition (spinabifida) and described appellant's penis as crooked or bent. Evidence at trial confirmed these unique physical features.

Prior to trial, appellant made several motions to suppress various testimonial evidence. The district court ruled that opinion testimony as to T.L.M.'s truthfulness, evidence that appellant had avoided meeting with Hagland, and evidence relating to appellant's drug use would not be admissible at trial. But, eventually, testimony regarding all three of these suppressed subjects was heard by the jury.

The prosecutor admitted that despite the court's ruling he had not instructed mother to avoid vouching for T.L.M.'s credibility. The prosecutor was unsure whether or not he instructed Hamm not to mention appellant's drug use, but he asserted that he had told Hagland not to mention that appellant had missed appointments to meet with him.

T.L.M. had undergone a gynecological exam, the results of which appellant asserts were exculpatory, that appellant did not learn of until the trial had commenced. The results of the exam revealed that, although T.L.M. had alleged that appellant had penetrated her, T.L.M.'s vagina appeared "normal," and although appellant had hepatitis A, B, and C, T.L.M. tested negative for all three diseases.

Appellant asserts that it is unlikely that, although three of the state's witnesses knew of the exam, the prosecutor did not, and nondisclosure—intentional or inadvertent—warrants reversal under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Minn. R.Crim. P. 9.01, subd. 1(1)(6). The district court denied appellant's motions for a mistrial and a continuance, and allowed appellant time to obtain an expert witness but ruled that the trial would otherwise go forward as scheduled. Appellant did not obtain an expert, but argued the exculpatory nature of the medical examination to the jury.

Appellant was found guilty of all three counts of first-degree criminal sexual conduct. This appeal followed.

## ISSUES

I.    Does the introduction of suppressed evidence as a result of prosecutorial misconduct warrant reversal of appellant's convictions?

II.   Did a *Brady* violation occur warranting reversal of appellant's convictions?

III.  Were the prosecution's improper statements in closing arguments unduly prejudicial, warranting reversal of appellant's convictions?

## ANALYSIS

### I.

In cases involving serious prosecutorial misconduct this court will reverse if

the misconduct was so prejudicial as to have substantially affected the jury and denied appellant a fair trial. *State v. Caron,* 300 Minn. 123, 128, 218 N.W.2d 197, 200 (1974).

■ Prior to trial, appellant moved to have various pieces of evidence suppressed. The district court ruled that opinion testimony concerning C.C.'s truthfulness, evidence of appellant's drug use, and evidence that appellant had missed two scheduled meetings with Hagland were to be suppressed. Testimony by state witnesses about these prohibited subjects was eventually heard by the jury, and appellant duly objected.[1]

■ During direct examination, the prosecutor specifically asked T.L.M.'s mother if she believed T.L.M.'s allegations of sexual abuse. Mother replied, "Yes." There is no doubt that it was misconduct for the prosecution to ask if mother believed T.L.M. *See Van Buren v. State,* 556 N.W.2d 548, 551–52 (Minn.1996). The state has a duty to prepare its witnesses, prior to testifying, to avoid inadmissible or prejudicial statements. *State v. Carlson,* 264 N.W.2d 639, 641 (Minn.1978) (citing *State v. Huffstutler,* 269 Minn. 153, 130 N.W.2d 347 (1964)). A reviewing court is much more likely to find prejudicial misconduct when the state intentionally elicits impermissible testimony. *State v. Richmond,* 298 Minn. 561, 563, 214 N.W.2d 694, 695 (1974). But an intentional elicitation of impermissible testimony, although erroneous, will warrant reversal only when it is likely that the impermissible testimony substantially weighed on the jury's decision. *Id.* at 563, 214 N.W.2d at 695.

■ While testifying on cross-examination, in response to an otherwise appropri-

ate defense question calling only for a yes-or-no answer, Hamm stated that appellant was, at a particular time, in treatment for cocaine addiction. Defense counsel has a responsibility to limit questioning to avoid eliciting objectionable testimony, and appellant's trial counsel did so in this case. *State v. Underwood,* 281 N.W.2d 337, 342 (Minn.1979). The statement was made in response to a yes-or-no question as to whether appellant was living with T.L.M. and her family at a particular time. Following the statement, appellant's counsel objected, and the district court directed the jury to disregard Hamm's statement.

To prevent its witnesses from offering improper testimony, the state has a duty to properly prepare them—defining for the witness the acceptable limits of their testimony—prior to trial. *Underwood,* 281 N.W.2d at 342. The prosecutor did not recall whether or not Hamm had been told she would not be permitted to testify about appellant's drug use. Respondent argues that the prosecutor was not required to do so because the court's order suppressing the evidence did not so direct him. But respondent cites no authority for this proposition. To the contrary, Minnesota law is crystal clear on this issue—the state has an absolute duty to prepare its witnesses to ensure that they are aware of the limits of permissible testimony. *State v. Hogetvedt,* 623 N.W.2d 909, 914 (Minn. App.2001), *review denied* (Minn. May 29, 2001).

The evidence that appellant abused T.L.M. was overwhelming and included graphic, consistent testimony from T.L.M. as well as her description of appellant's unique physical characteristics. Given this evidence, we cannot conclude that the single occurrence of vouching, even though

1. Appellant did not object, at trial, to mother's credibility vouching but, as noted in the committee comment to Minn. R. Evid. 103, a pretrial motion to prohibit evidence operates as a timely objection, and further objection is not necessary to preserve the issue for review.

initiated by the prosecutor, or the mention by Hamm of appellant's drug addiction substantially affected the jury's decision.

During the course of the state's direct examination of Hagland, notwithstanding the district court order prohibiting this testimony, Hagland mentioned twice that he had set up an interview with appellant; appellant's counsel objected and sought a mistrial. The court denied the motion, stating that there was no testimony that appellant had missed the appointment or had been avoiding Hagland and then directed the jury to disregard the testimony.

■ A district court's denial of a motion for a mistrial based on prosecutorial misconduct is reviewed under the abuse-of-discretion standard. *State v. Scruggs*, 421 N.W.2d 707, 716 (Minn.1988). The key element is whether the misconduct has prejudiced appellant, denying him his right to a fair trial. *Id.* While it is less clear that prosecutorial error occurred here, the analysis remains the same—even if error occurred, we cannot conclude that Hagland's testimony caused appellant unfair prejudice. The district court properly gave a curative instruction, and we find no abuse of discretion in the denial by the district court of a motion for a mistrial.

■ When a jury is exposed to potentially prejudicial material, a problem of constitutional magnitude has arisen—the accused's right to an impartial jury has been threatened. *Id.* In evaluating whether an appellant has been denied his right to trial by an impartial jury, we must consider the source of the improper evidence and the number of jurors exposed to it. We must then weigh the prejudicial evidence against the evidence properly before the court and consider the effectiveness of any curative measures. *Hogetvedt*, 623 N.W.2d at 914.

We conclude that error did occur in the above instances, but the overwhelming weight of the evidence including compelling testimony by T.L.M. and her description of facts that she was very unlikely to know absent the abuse, lead inescapably to the conclusion that appellant was not denied his right to trial by a fair and impartial jury. We conclude that the jury was not, in all likelihood, prejudicially affected by the improper testimony.

## II.

■ T.L.M. testified during cross-examination that Hamm had taken her to see a gynecologist following the report of sexual abuse. Although three of the state's witnesses—T.L.M., mother, and Hamm—knew of the examination, both appellant's counsel and the prosecutor indicated this was the first they had learned of the medical examination. Appellant moved for a mistrial and alternatively requested time to review the examination results. Appellant did receive a limited amount of time to review the documents, but the motion for a mistrial was denied. The examination results, which were initially incomplete when presented to the defense, once completely retrieved, indicated that T.L.M. had a "normal" vagina and that she tested negative for sexually transmitted diseases.[2]

Appellant argued the examination results were exculpatory, and that the defense would have been different had the results been available during discovery. Appellant further argues that since three of the state's witnesses were allowed to testify before the medical reports were reviewed by appellant's counsel, his right to a fair trial was denied.

Minn. R.Crim. P. 9.01, subd. 1(1)(6), requires the state to disclose information in its possession "that tends to negate or reduce the guilt of the accused as to the

---

**2.** Appellant has hepatitis A, B and C.

offense charged." Respondent insists that the medical examination was not in the possession of the prosecution and was unknown until T.L.M. mentioned it at trial.

A district court's ruling on discovery issues is reviewed for an abuse of discretion. *State v. Lindsey*, 284 N.W.2d 368, 373 (Minn.1979). To demonstrate a due-process violation warranting reversal of a conviction, appellant must show that (1) the state willfully or inadvertently withheld evidence, (2) the evidence was favorable to the defendant, and (3) he or she was prejudiced thereby. *Woodruff v. State*, 608 N.W.2d 881, 886 (Minn.2000). Although it is difficult to understand how such a critical piece of information was not within the prosecution's knowledge until after the commencement of trial, we cannot say the district court abused its discretion in denying appellant's motion for a mistrial. Based on the record before this court, and given our limited standard of review in evidentiary matters, we cannot conclude that the state willfully or inadvertently withheld the evidence.

Additionally, the district court took steps to ameliorate the harm to appellant—allowing appellant access to the examination file, allowing appellant the option of recalling witnesses, and allowing appellant time to obtain an expert witness—and these ameliorative measures adequately addressed any inconvenience due to the late discovery of the evidence. While in cases of mid-trial discovery of relevant and significant evidence a reasonable continuance may at times be appropriate, the district court stated on several occasions that continuances would not be granted and that the trial would proceed. To obtain a continuance in such cases, an appellant must demonstrate that the result of the trial would likely be different but for the alleged error. *State v. Hunt*, 615 N.W.2d 294, 299 (Minn.2000). Appellant made no showing before the district court

as to how a continuance would have benefited appellant's case and, in fact, declined to call an expert witness. We conclude that appellant was not denied his right to a fair trial by the late discovery and denial of his requests for continuances.

### III.

Appellant argues that the prosecutor committed prejudicial misconduct by arguing beyond the facts of the case and the elements of the charges in closing statements. Appellant's trial counsel did not object during the state's closing and, therefore, this court will reverse based on these alleged errors only if the comments were unduly prejudicial. *State v. Whittaker*, 568 N.W.2d 440, 450 (Minn. 1997). In cases such as this, where credibility is the central issue, special attention must be paid to statements that may prejudice or inflame the jury. *State v. Porter*, 526 N.W.2d 359, 363 (Minn.1995). When reviewing alleged misconduct in closing statements, this court must look at the whole argument in context, not just selective phrases or remarks. *State v. Walsh*, 495 N.W.2d 602, 607 (Minn.1993). "Prosecutors in sexual abuse cases must abide by the highest behavior." *State v. Danielson*, 377 N.W.2d, 59, 61 (Minn.App.1985) (quoting *State v. Jahnke*, 353 N.W.2d 606, 611 (Minn.App.1984)). Sexual-abuse cases inevitably evoke an emotional reaction, and any attempt by the prosecutor to exacerbate this natural reaction by making "any emotive appeal" to the jury "is likely to be highly prejudicial." *Id.* Appellant argues that in the following portion of the state's closing argument an appeal was made to the sympathies of the jurors:

> [T.L.M.], this means that you're not a virgin anymore. Her first sexual experience, not as an adult, not on her wedding night, not in college, not even in high school. As an eight year old, as a nine year old, as a ten year old. You can't take away the burden that [T.L.M.]

will carry with her the rest of her life. You can't give her back her childhood. You can't give her back her virginity. But you can give her justice.

Appellant contends that this statement was made to play on the sympathies of the jury and had nothing to do with the facts of the case or the elements of the crimes charged. We agree. These statements were wholly unrelated to the elements of the offenses with which appellant was charged or the evidence at trial.

Appellant also argues that the prosecutor improperly vouched for T.L.M.'s credibility during closing arguments. In explaining to the jury that it was implausible that T.L.M. had fabricated the alleged abuse, the prosecutor stated the following:

Did anyone think that was fun for her? No. No, it wasn't. Maybe she lied about taking food from the fridge, but not about this. When [T.L.M.] was on that witness stand did she look to you like she was lying as she sat there and sobbed every time she had to recall the abuse? No.

Later, when explaining why T.L.M. testified as she did, the prosecutor stated: "Because it's the truth, that's why."

■ It is not proper for a prosecutor to endorse the credibility of a witness in closing statements. *Porter*, 526 N.W.2d

at 364. A prosecutor may argue as to the credibility of witnesses but may not throw his own opinion onto the scales of credibility. *State v. Ture*, 353 N.W.2d 502, 516 (Minn.1984). It is the jury's province to determine, of its own accord, what constitutes the truth. *State v. Costello*, 646 N.W.2d 204, 213 (Minn.2002). It is not for the prosecutor to tell the jury what he believes the truth to be.[3]

■ Appellant also argues that it was improper for the prosecutor to invite the jury to punish appellant for exercising his right to trial. Appellant specifically points to the following statement in which the prosecutor attacks appellant for forcing C.C. to go through a trial: "To come in here and put her through this, shamed her for never telling anyone, [victimize her] all over again." Article I, Section 6 of the Minnesota State Constitution guarantees a criminal defendant the right to a public trial by an impartial jury and to confront witnesses against him. Minn. Const. art. I, § 6. It is misconduct for a prosecutor to attack a defendant for exercising his right to a fair trial and to encourage the jury to punish him for what the prosecutor perceives as further victimization of the victim.

The assertion by respondent that there was no error in the prosecution's closing argument is simply wrong. But although

**3.** We also note that the improper statements in this case ran afoul of the ABA standards for criminal prosecution, which the Minnesota Supreme Court has cited with approval:

Standard 3–5.8 Argument to the Jury

\* \* \*

(b) The prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not make arguments calculated to appeal to the prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence.

Standard 3–5.9 Facts Outside the Record

The prosecutor should not intentionally refer to or argue on the basis of facts outside the record whether at trial or on appeal, unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice.

ABA Standards for Criminal Justice Prosecution Function and Defense Function, standards 3–5.8, 3–5.9 (Third Ed.1993); *see State v. Richardson*, 514 N.W.2d 573, 577 (Minn. App.1994).

we recognize that it is improper for a prosecutor to evoke sympathy for a victim and encourage ire against a defendant for exercising his absolute right to face his accuser and be tried by a fair and impartial jury, this act of misconduct simply cannot, even when considered with the other errors, outweigh T.L.M.'s descriptive and detailed testimony. Therefore, we do not find these statements, although improper, to have unduly prejudiced appellant. *See Whittaker,* 568 N.W.2d at 450.

■ Prosecutors have a duty not to win a case by any means necessary but to see that justice is done. *State v. Haney,* 222 Minn. 124, 130, 23 N.W.2d 369, 372 (1946). Justice is done only when the accused, regardless of guilt or innocence, receives a fair trial. *Id.* at 130–32, 23 N.W.2d at 372–73. The cumulative actions and decisions, or in some cases, non-decisions, of the prosecutor in this case fall well short of the high standard of behavior required by *Danielson* and other appellate decisions; but given the extraordinary weight of the evidence, we cannot say appellant did not receive a fair trial.

## DECISION

■ In order to reverse a conviction for serious prosecutorial misconduct, the prosecutor's misconduct must be inexcusable and so serious so as to deprive appellant of a fair trial. *State v. Bright,* 471 N.W.2d 708, 711 (Minn.App.1991), *review denied* (Minn. Aug 1, 1991). Here, we conclude that the individual instances of prosecutorial misconduct are serious and inexcusable, but after careful consideration of the record in this particular case, we cannot say that appellant was denied his right to a fair trial. Therefore, we affirm.

**Affirmed.**