*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2308**

Michael Cordale Henderson, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed August 18, 2014
Affirmed as modified
Connolly, Judge**

Hennepin County District Court
File No. 27-CR-08-53946

Michael Cordale Henderson, Bayport, Minnesota (pro se appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and

Schellhas, Judge.

## UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges the denial of his petition for postconviction relief, arguing

that the postconviction court abused its discretion in concluding that prosecutorial

misconduct did not entitle appellant to a new trial and that appellant's removal of the victim was not incidental to his attempted criminal sexual conduct; he also argues that the postconviction court erred in not vacating his three unsentenced convictions. Because there was no abuse of discretion, we affirm the decisions that appellant is not entitled to a new trial because of prosecutorial misconduct and that his removal of his victim was not incidental; because the three unsentenced convictions were on lesser-included offenses, we modify the postconviction court's decision by vacating them.

**FACTS**

In May 2007, appellant Michael Henderson kidnapped and raped J.I., a woman whom he found sleeping on a park bench.[1]  On August 20, at about 3:30 a.m., appellant approached A.L. as she waited at a bus stop.  He grabbed her wrist, pressed the back of a box cutter against her neck, moved with her into a park, and pushed her to the ground. He pulled down her pants, but fled when A.L. managed to call the police.

On August 24, while walking along a street with her then-fiancé, J.L., A.L. recognized appellant as her assailant and pointed him out to J.L.  Appellant ran, and J.L. pursued him.  A.L. found someone with a phone and asked that person to call the police. When the police arrived and searched appellant, they found a box cutter.

Appellant was charged with six counts for the events of August 20:  (1) second-degree assault, (2) attempted first-degree criminal sexual conduct – causing fear of great

---

[1] Appellant's convictions and consecutive sentences for kidnapping J.I. and engaging in first-degree criminal sexual conduct with her have already been affirmed by this court. *State v. Henderson*, No. A12-1888, 2013 WL 5777886 (Minn. App. Oct. 28, 2013), *review denied* (Minn. Dec. 31, 2013) (*Henderson I*).

2

bodily harm, (3) attempted first-degree criminal sexual conduct – dangerous weapon, (4) attempted second-degree criminal sexual conduct – causing fear of great bodily harm, (5) attempted second-degree criminal sexual conduct – dangerous weapon, and (6) kidnapping.[2]

In 2009, appellant was found incompetent to proceed to trial; in 2010, he was found competent. The trial was scheduled for March 2011. Appellant petitioned to appear pro se, and did so. *Spreigl* evidence of his assault and rape of J.I. was introduced at trial. The jury found him guilty on all six counts. In May 2011 he received three concurrent prison sentences: 180 months for attempted first-degree criminal sexual conduct – causing fear of great bodily harm; 61 months on second-degree assault, and 61 months for kidnapping. The district court did not sentence him on the remaining three counts.

In May 2013, appellant, then represented by counsel, petitioned for postconviction relief. He challenges the denial of his petition, arguing that the postconviction court abused its discretion (1) in concluding that the prosecutor did not commit misconduct, (2) in upholding the kidnapping conviction on the ground that appellant's confinement and removal of A.L. were not merely incidental to the attempted criminal sexual assault, and (3) in not vacating appellant's unsentenced convictions as lesser included offenses. Appellant also raises other issues in a pro-se brief.

---

[2] Appellant was also charged with two counts for the events of August 24: second degree assault of A.L. and second degree assault of J.L. The jury found him not guilty on these counts, and that finding is not challenged on appeal.

3

**D E C I S I O N**

**1.      Prosecutorial Misconduct**

In closing argument, the prosecutor said**:**

> A woman alone outside in the middle of the night should not have to fear . . . that she will be approached by a man who will grab her, use a weapon, and drag her away from a public street into a secluded area. A woman should not have to fear being raped.
>
> *[A.L.] lived that nightmare* when on August 20, 2007, this man [appellant] approached her, grabbed her, held a box cutter to her neck, and dragged her into the park where he was going to rape her.
>
> . . . .
>
> [A.L.] came before you. She took that witness stand and *she relived that horrifying experience*. She told a roomful of strangers personal details about her life. She confronted her attacker and told you and him that what he did to her was wrong. *[A.L.] must be believed*.
>
> . . . .
>
> *[A.L.] must be believed*. This case comes down to credibility. Credibility of the witnesses you've heard from during this trial.

(Emphasis added.)     Appellant argues that the emphasized language constituted prosecutorial misconduct. He did not object to this language during or after the trial. The postconviction court concluded that:

> A reviewing court must also consider the closing argument as a whole, rather than just selective phrases or remarks which may be taken out of context or given undue prominence. In this situation, the Prosecution twice stated that the victim must be believed while also making it clear to the jury that they should use common sense, their experiences, and other factors to help them gage whether or not a witness can be believed.
>
> Likewise, the prosecutor's recitation of the victim's experiences was not in error. It is fair to interpret the prosecutor's statement that the victim lived that nightmare of

4

> attempted rape as a fair comment on specific evidence in this case as the victim herself described the experience as a nightmare. Further, the prosecutor's statement that the victim "relived that horrifying experience" while testifying was a fair comment and assessment due to the victim experiencing cross-examination by her pro se assailant.
>
> Because the prosecutor's comments were merely her analysis of testimony and her vigorously advocating for the witness's credibility, there was no prosecutorial error.

(Quotations omitted).

"When reviewing a postconviction court's decision, [an appellate court will] examine only whether the postconviction court's findings are supported by sufficient evidence . . . [and] will reverse . . . only if that court abused its discretion." *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012) (quotation omitted). The determination of whether a prosecutor committed misconduct during closing argument is within the district court's discretion. *State v. Ray*, 659 N.W.2d 736, 746 (Minn. 2003). Prosecutorial misconduct requires a violation of "clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law." *State v. McCray*, 753 N.W.2d 746, 751 (Minn. 2008) (quotation omitted). A prosecutor has the "right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom." *State v. Wahlberg*, 296 N.W.2d 408, 419 (Minn. 1980). Because the alleged errors in the prosecutor's closing statement were not objected to, the standard of review is plain error. *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (stating that defendant must demonstrate that error occurred and that error was plain, but prosecution must show lack of prejudice).

5

**A. Statement that A.L. lived a nightmare**

To argue that the prosecutor's statement that A.L. "lived a nightmare" was misconduct, appellant relies on *State v. Bashire*, 606 N.W.2d 449, 453 (Minn. App. 2000) (criminal sexual assault case concluding that prosecutor's statements that sexual assault was the "worst nightmare of the parents of every teenage girl" and that jurors should imagine undergoing what had happened to the teenage victim were "improper only in form and not in content" and were not unduly prejudicial to the defendant), *review denied* (Minn. Mar. 28, 2000).

Appellant made, and this court addressed, exactly the same argument in *Henderson I*: "[T]he prosecutor's closing argument that J.I. lived the nightmare of being alone at night and raped by a stranger was not improper because it was a reasonable inference from J.I.'s testimony." Here, A.L. testified that, after being dragged to the back of a park by a man who was holding a box cutter to her neck and trying to pull her pants down, she felt violated and sexually assaulted. The prosecutor's statement that A.L. "lived a nightmare" during appellant's assault was not misconduct because it was properly inferred from her testimony. *See Wahlberg*, 296 N.W.2d at 419.

**B. Statement that A.L. relived her nightmare**

To argue that the prosecutor's statement that A.L. relived her nightmare during cross-examination was misconduct, appellant relies on *State v. McNeil*, 658 N.W.2d 228, 235 (Minn. App. 2003) (concluding that prosecutor committed misconduct, but did not deprive the defendant of a fair trial, by stating that defendant victimized the victim again

6

by requiring her to testify). But the prosecutor's statement referred to A.L.'s particular experience of having to face her assailant and respond to his questions.

A.L.'s responses showed that she relived the incident as appellant questioned her about it. When appellant asked A.L. if she might have mistaken him for the person who attacked her, she said, "No. Your face, everything about you is the same [as the person who attacked me]." When appellant asked if A.L. was certain the person she identified on August 24 was the person who attacked her on August 20, she answered, "Yes, I am certain without a reasonable doubt. You're sitting right here in front of me." When asked if she recognized only appellant's clothing on August 24 because she did not see his face, she said, "That's incorrect. When you were far [away], I wasn't looking at your face. But when you [were] in my face, and somebody's laying on top of you you know what they look like." The prosecutor's comment that A.L. relived the assault while her assailant, i.e. appellant, cross-examined her about it was also a proper inference from A.L.'s testimony. *See id.*

### C. Statement that A.L. must be believed

Finally, appellant argues that the prosecutor's remark, "[A.L.] must be believed" violated *State v. Swanson*, 707 N.W.2d 645, 656 (Minn. 2006) (holding that a prosecutor's statement that "'the state believes [one of the witnesses] is very believable'" was "impermissible vouching on its face because the state directly endorsed the credibility of [that] witness"). We agree. But, although the prosecutor's statement was impermissible, *Swanson* held, "[G]iven the strength of the evidence . . . and given that the impermissible vouching constituted only a small part of the prosecutor's closing

7

argument, we hold the statements, while plain error, were not sufficiently prejudicial to warrant a new trial." *Id.*

Here, the postconviction court found that "any prosecutorial error was harmless beyond a reasonable doubt" because all the challenged statements "amounted to less than 15 lines within a 20 page closing statement" and the jury heard testimony from the victim that identified appellant positively, testimony from the victim's husband, testimony from the responding officers, and *Spreigl* testimony from appellant's prior victim. The postconviction court concluded that "the improper comment[s] did not unduly influence the jury because the weight of evidence against [appellant] is so strong." As in *Swanson*, any prosecutorial comment in closing argument, even if improper, was harmless beyond a reasonable doubt.

## 2.    The Kidnapping Conviction

In a kidnapping case, the confinement or removal "must be criminally significant in the sense of being more than merely incidental to the underlying crime, in order to justify a separate criminal sentence." *State v. Smith*, 669 N.W.2d 19, 32 (Minn. 2003), *overruled on other grounds*, 699 N.W.2d 312 (Minn. 2005). The postconviction court concluded that:

> In this situation, the confinement and removal were not incidental to the felony. [Appellant] forcibly, with a box cutter to her neck, removed [A.L.] by dragging her away from a well lit public bus stop to an area which was secluded, dark, and run-down. Pressing the box cutter against the victim's neck, [appellant] dragged A.L. through trees toward the middle of the park where he pushed the victim down onto her back and attempted to engage in criminal sexual conduct

8

against [A.L.'s] will, while confining the victim with a box cutter and his legs.

Appellant challenges his conviction of kidnapping on the ground that his "removal and confinement" of A.L. were "purely incidental to the perpetration of the criminal sexual conduct." Again, this court addressed and resolved appellant's argument in *Henderson I.*

> J.I. [the victim in *Henderson I*] was dragged by her hair from a bench to a different location in the darker part of the park before [appellant] sexually assaulted her. The removal certainly facilitated the crime, but it was also more than merely incidental to the criminal sexual conduct because [appellant] could have sexually assaulted J.I. at the park bench without moving her to a different location in the park. The evidence is sufficient that the removal was more than merely incidental to the criminal sexual conduct . . .

*Henderson,* 2013 WL 5777886, at *3. Here, appellant held a box cutter to A.L.'s neck and dragged her away from a lighted bus stop to a dark part of the park; he could have sexually assaulted her at or near the bus stop. The kidnapping was not merely incidental to the attempted criminal sexual conduct.

## 3.    Unsentenced Convictions

Appellant was sentenced on convictions of second-degree assault, first-degree attempted criminal sexual conduct – causing fear of great bodily harm, and kidnapping; he was not sentenced on his convictions of first-degree attempted criminal sexual conduct – dangerous weapon, second degree attempted criminal sexual conduct – fear of great bodily harm, and second-degree attempted criminal sexual conduct – dangerous weapon. He argues that these unsentenced convictions should be vacated as "lesser included

9

offenses" under Minn. Stat. § 609.04, subd. 1 (2012) (providing that a person may not be convicted of both the crime charged and an included offense, i.e., a lesser degree of the crime charged, an attempt to commit the crime charged, or an attempt to commit a lesser degree of the crime charged).

The state agrees that those convictions should be vacated, but notes that "the underlying jury verdicts of guilty [on the unsentenced convictions] must remain intact." *See State v. Cruz-Ramirez*, 771 N.W.2d 497, 510 (Minn. 2009) ("The State does not object to vacating the [unsentenced] convictions, but asks us to note that the underlying guilty verdicts remain in force."); *State v. Earl*, 702 N.W.2d 711, 723-24 (Minn. 2005) ("[T]he state agrees [with the defendant that seven of his ten convictions based on the same conduct against the same victim must be vacated] but points out that the underlying guilty verdicts should remain in force for each of these seven counts."). Thus, appellant's unsentenced convictions should be vacated.

**4. Issues in Appellant's Pro Se Brief**

Appellant's three issues lack merit. Appellant claims first that A.L. and J.L. committed perjury and their testimony should have been rejected. Credibility determinations are the province of the jury. *State v. Flores*, 595 N.W.2d 860, 867 (Minn. 1999). The jury believed A.L. and J.L., despite appellant's efforts to impeach their testimony when he cross-examined them.

Second, appellant challenges the chain of custody of some of the evidence relevant to the conviction affirmed in *Henderson I;* that challenge is irrelevant to this case.

Third, appellant objects to the introduction of the case addressed in *Henderson I* as *Spreigl* evidence. The admission of *Spreigl* evidence lies within the sound discretion of the district court and will not be reversed absent a clear abuse of discretion. *State v. Spaeth*, 552 N.W.2d 187, 193 (Minn. 1996). The postconviction court noted that: (1) appellant had made his identification a central issue in this case, and the very similar crime of which he was convicted in *Henderson I* was therefore relevant to establish his identity, his intent to commit a sexual assault, and his modus operandi; (2) the trial court concluded that the prejudicial effect of the *Henderson I* incident evidence would not outweigh its probative value and excluded as *Spreigl* evidence two other incidents because their probative value would have been outweighed by their prejudicial effect; and (3) the jury was instructed on the limited purpose of the *Spreigl* evidence presented. There was no abuse of discretion in admitting the *Henderson I* incident as *Spreigl* evidence.

We affirm the postconviction court's determinations that appellant was not entitled to a new trial because of prosecutorial misconduct and that his kidnapping conviction should not be vacated because his removal of A.L. was not merely incidental to his attempted criminal sexual conduct; we modify the postconviction court's opinion by vacating appellant's unsentenced convictions.

**Affirmed as modified.**