*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0990**

State of Minnesota,
Respondent,

vs.

Benjamin Danton Newman,
Appellant.

**Filed April 11, 2016
Affirmed in part, reversed in part, and remanded
Connolly, Judge**

Wabasha County District Court
File No. 79-CR-14-278

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant challenges his criminal-sexual-conduct convictions, arguing that the district court abused its discretion in admitting expert-witness testimony on the tendency

of adolescent victims of sexual abuse to delay reporting the abuse and that the prosecutor committed misconduct by referring to the victim's loss of virginity. Appellant also challenges his sentence, arguing that the record was not sufficiently developed as to his criminal history. Because we see no abuse of discretion in the admission of the expert-witness testimony and no misconduct in the prosecutor's reference to the loss of the victim's virginity, we affirm appellant's convictions; because the parties agree that the record concerning appellant's criminal history was not sufficiently developed, we reverse the sentence and remand for a hearing and further findings.

## FACTS

During the summer of 2012, A., the daughter of appellant Benjamin Newman, brought her friend C.J., then 13, to visit appellant in his trailer home. C.J. testified that, on the night of June 19, A. went to sleep in a bedroom, and appellant and C.J. remained in the living room, watching videos and drinking alcohol. C.J. fell asleep in a chair and woke during the night to find appellant putting his tongue in her mouth and his hands down her pants. She told A. about this the next morning, but told no one else.

On the night of July 4, C.J. and appellant again stayed up watching videos and drinking alcohol while A. slept. When C.J. fell down on the floor, appellant got on top of her, looked down her pants, said he wanted to see more, and told her to go into his bedroom. There, he removed her clothing below the waist and had intercourse with her for what C.J. thought was about half an hour. He then told her to clean up; she did so, put on her clothes, and went to sleep. A couple of weeks later, she told A. what had happened. She and A. agreed that, if it happened again, they would leave appellant's trailer.

2

C.J. and appellant had daily electronic contact for the next few weeks. At one point, they talked about the July 4 incident and appellant told C.J. he "could get in trouble." C.J.'s mother noticed that something was wrong with C.J., who seemed depressed and had started to cut herself.

Later in July, when C.J. and A. were at appellant's residence, A. left to spend the night at her grandmother's. Appellant took C.J. into his bedroom and asked her to perform oral sex. She refused, and he had intercourse with her. C.J. then wanted to go home and asked her mother to come and get her; she did not talk to appellant again. A couple of weeks later, C.J. told A. what had happened. A. stopped visiting appellant.

Around Christmas of 2012, C.J.'s mother was concerned about C.J.'s depression and asked appellant if something was going on between him and C.J. He denied that anything inappropriate had happened. In March 2013, A. sent C.J.'s mother a text message saying appellant had had sex with C.J., but C.J. denied this when her mother asked her about it. In December 2013, C.J. told her boyfriend about the three incidents in June-July 2012; he then told C.J.'s mother, who took C.J. to the police station so she could file a report.

The June 19 incident resulted in appellant being charged with second-degree criminal sexual conduct (Count I); the July 4 and late-July incidents resulted in him being charged with first-degree criminal sexual conduct (Counts II and III). The jury found appellant guilty of counts I and II, but not guilty of count III.

He challenges his convictions, arguing that the district court abused its discretion by admitting expert-witness testimony as to the tendency of adolescent abuse victims to

3

delay reporting their abuse and that the prosecutor committed misconduct when, during closing argument, he referred repeatedly to C.J.'s loss of virginity and referred once to the difficulty she experienced in testifying about the abuse.

## DECISION

### 1. Expert-witness testimony

"The admission of expert testimony is within the broad discretion accorded [to] a [district] court, and rulings regarding materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence may be reversed only if the district court clearly abused its discretion." *State v. Ritt*, 599 N.W.2d 802, 810 (Minn. 1999) (quotation and citation omitted).

At trial, appellant objected to the proposed testimony of a licensed psychologist on the delayed reporting of sexual abuse by adolescent victims, arguing that this case did not involve delayed reporting and the testimony would be irrelevant. The district court admitted the testimony, finding that

> there is testimony in the record from which it would appear that the reporting was delayed, and, therefore, testimony as to the general propensities of adolescent victims that would include delayed reporting would be relevant and of assistance to the Jury in addressing any questions the Jury might have about the timing of the reporting.

The licensed psychologist testified that she had not met C.J., but that adolescent victims of sexual abuse: (1) are more likely to reveal the abuse to friends than parents or other relatives; (2) may reveal the abuse either because they want it to end or because they seek support; (3) may postpone revealing the abuse for a few weeks or months or until they

4

themselves are adults; (4) may postpone revealing abuse because they have been threatened; they feel embarrassment, guilt, or fear; or they want to protect the abuser; (5) have conflicting feelings toward the abuser; and (6) experience feelings such as depression, and manifest the feeling by acting out or self-destructive behavior. Appellant's counsel moved to strike this testimony as irrelevant. The motion was denied, and the district court noted that it was "quite consistent" with C.J.'s testimony.

The district court's decision to admit expert-witness testimony on delayed reporting is supported by caselaw. *See, e.g.*, *State v. Hall*, 406 N.W.2d 503, 503 (Minn. 1987) ("It is within the trial court's discretion to admit expert testimony concerning the behavioral characteristics typically displayed by adolescent sexual assault victims."); *State v. Sandberg*, 406 N.W.2d 506, 507 (Minn. 1987) ("It is within trial court's discretion to admit expert testimony concerning the reporting practices of adolescent victims of sexual assault."); *see also State v. Obeta*, 796 N.W.2d 282, 283 (Minn. 2011) ( holding that, when defendant argues sexual conduct was consensual, "the district court has discretion to admit expert-opinion evidence on the typicality of delayed reporting . . . . when [it] concludes that such evidence is helpful to the jury and the opinion has foundational reliability"). While appellant argues that these decisions are not "a blanket invitation that conduct labeled by the state as 'delayed reporting' is always admissible," he makes no attempt to distinguish them.

Appellant argues that the testimony was unfairly prejudicial because "the state used the expert to unfairly bolster and vouch for the complainant's credibility: the expert, although she did not expressly comment on C.J.'s credibility, provided such improper

5

bolstering." But appellant does not explain how testimony as to the behavior of adolescent sexual-abuse victims generally could have unfairly bolstered the credibility of this particular victim, whom the expert witness had never met and on whose testimony she did not comment.

The district court did not abuse its discretion in admitting the expert-witness testimony.

**2.     Prosecutorial misconduct**

A district court's denial of a new-trial motion based on alleged prosecutorial misconduct will be reversed only "when the misconduct, considered in the context of the trial as a whole, was so serious and prejudicial that the defendant's constitutional right to a fair trial was impaired." *State v. Johnson*, 616 N.W.2d 720, 727-28 (Minn. 2000). When the defendant fails to object, prosecutorial misconduct is reviewed under the plain-error standard, requiring that (1) the prosecutor's act was error, (2) the error was plain, and (3) the error affected the defendant's substantial rights. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). While the defendant has the burden of showing the first two criteria, the state has the burden of proving that there is no reasonable likelihood that the absence of the misconduct would have had a significant effect on the jury's verdict. *Id.*

The phrase "lost her virginity" occurs four times in the prosecutor's 23-page closing argument. The argument opened with the sentence, "On June 19th of 2012, [C.J.] turned 13, and just a few weeks later she *lost her virginity* to a 36-year-old man named [appellant]." During the argument, the prosecutor explained the fact that some witnesses said they had not seen any misconduct by saying, "the only witness to the conduct was the

6

girl who *lost her virginity*; was the girl who was inappropriately touched, because they [C.J. and appellant] were alone in the room together when those things happened." The argument concluded:

> [T]his 15-year-old girl ha[d] to tell about how she *lost her virginity* at 13 to a room full of strangers. . . . Not only was this a traumatic event, but it happened almost three years ago, [and] she came here and told you what happened . . . .
> On June 19th of 2012, [C.J.] turned 13, and a few weeks later she *lost her virginity* to the defendant, a 36-year-old man. As C.J. told you, she has to live with that.

Appellant did not object to any of the references to lost virginity during the trial.

"A prosecutor must not appeal to the passions of the jury. When credibility is a central issue, this court pays special attention to statements that may inflame or prejudice the jury." *State v. Mayhorn*, 720 N.W.2d 776, 786-87 (Minn. 2006) (citation omitted). Appellant argues that the references to C.J.'s loss of virginity did not concern an element of the crimes and inflamed the passions of the jury and were therefore plain error.

Even assuming that the references were error and that the error was plain, the error did not affect appellant's substantial rights. References to the virginity of teenage victims of criminal sexual conduct have been held not to justify a new trial. *See, e.g.*, *Finnegan v. State*, 764 N.W.2d 856 (Minn. App. 2009), *aff'd on other grounds*, 784 N.W.2d 243 (Minn. 2010); *State v. McNeill*, 658 N.W.2d 228 (Minn. App. 2003). *Finnegan* concerned a 14-year-old victim; the prosecutor made nine comments relative to her innocence and virginity at the time of the abuse in a 28-page closing argument, and defense counsel objected to two of them. *Finnegan* relied on *State v. Daniels*, 332 N.W.2d 172, 180 (Minn. 1983) (holding that a closing argument must be considered as a whole) and concluded that the

7

district court had not abused its discretion in denying postconviction relief. *Finnegan*, 764 N.W.2d at 866. Here, four comments were made in a 23-page closing argument, and appellant's counsel objected to none of them. On those facts, *Finnegan* does not support granting a new trial.

*Finnegan* also concluded that a prosecutor's "comments [in closing argument] were improper because they 'were wholly unrelated to the elements of the offenses with which [the] appellant was charged or the evidence at trial.'" *Finnegan*, 764 N.W.2d at 865 (quoting *McNeill*, 658 N.W.2d at 235). *McNeill* concerned abuse over a seven-year period, when the victim was eight to fifteen years old. 658 N.W.2d at 231. The prosecutor in *McNeill* (1) appealed to the jurors' sympathy, saying that, while the jury could not "give [the victim] back her childhood," or "give her back her virginity," it could "give her justice"; (2) improperly vouched for "[the victim's] credibility" and (3) "invite[d] the jury to punish [the] appellant for exercising his right to trial." *Id.* at 235. But even these three acts of misconduct together were found not to "outweigh [the victim's] descriptive and detailed testimony[,]" and "these statements, although improper, [did not] unduly prejudice [the] appellant." *Id.* at 236. Similarly, even if the prosecutor's four references of C.J.'s lost virginity and his comment on C.J.'s difficulty in testifying before the jury were improper, C.J.'s extensive testimony on the three incidents would outweigh the impropriety. *McNeill*, like *Finnegan*, also does not support granting a new trial on the basis of prosecutorial misconduct.

Finally, appellant challenges his sentence, arguing that the record of his criminal history was not sufficiently developed, and the State agrees with this position.[1]  We also agree.  We therefore affirm appellant's conviction but reverse his sentence and remand for a hearing and for the district court to make further findings relative to appellant's criminal-history score.

**Affirmed in part, reversed in part, and remanded.**

---

[1] Specifically, although appellant agreed at the sentencing hearing that he had a 2002 Wisconsin conviction of being a felon in possession of a firearm, he argues now that his presentence investigation report "failed to establish a prior felon in possession conviction" and "merely states that the prior conviction was 'equivalent' to a conviction under Minn. Stat. § 624.713, subd. 2(b)."