*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0872**

State of Minnesota,
Respondent,

vs.

Ronnie Price,
Appellant.

**Filed June 10, 2024**
**Affirmed**
**Larkin, Judge**

Hennepin County District Court
File No. 27-CR-20-23464

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Bratvold, Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges his conviction of third-degree criminal sexual conduct, arguing that the prosecutor erred by presenting inadmissible character evidence at his jury trial. Because the alleged error did not affect appellant's substantial rights, we affirm.

# FACTS

Respondent State of Minnesota charged appellant Ronnie Price with one count of third-degree criminal sexual conduct. The charge was tried to a jury.

The victim, SDS, testified that at the time of the offense, she was addicted to narcotics. She further testified that she would "buy or get drugs" from Price and that "it turned into a more sexual relationship" in which she would give him oral sex or a "hand job" in exchange for drugs. SDS testified that she made it very clear to Price that there would be no vaginal or anal penetration. According to SDS, she was not romantically interested in Price, and the sexual acts were "transactional," that is, she performed them to obtain drugs from Price.

As to the charged offense, SDS testified that Price owed her money, and he gave her some drugs, but the drugs were the wrong type. SDS wanted crack cocaine, but Price gave her methamphetamine. After a series of text-message communications, SDS agreed to perform oral sex on Price in exchange for crack cocaine. SDS went to the apartment where Price was staying, and the two of them went into a bathroom. SDS testified that she "shot [Price] up" with drugs and started to give him oral sex and that Price lifted her up, spun her around, pulled down her shorts, and inserted his penis into her rectum. SDS testified that she told Price to stop and tried to protect herself with a knife, but he took the knife away from her and continued to sexually assault her until he ejaculated. SDS left the apartment, returned to her own apartment, and called the police. When the police arrived, SDS told them about the sexual assault. Next, SDS went to a hospital and underwent a sexual-assault examination.

2

The state called SDS's friend as a witness at trial. The prosecutor asked SDS's friend about prior interactions with Price. The following exchange occurred:

> Q: In those couple times that you met [Price] prior to this incident, how would you describe his behavior toward [SDS]?
> A: His behavior to [SDS] and towards everyone that I had seen him interact with was bullyish. It was manipulative. It was rude, disrespectful. It was overpowering. He wouldn't listen to anyone asking for help moving boxes or furniture. He was actually—in my personal opinion, he was pretty lazy.

The defense did not object to that question or answer, but defense counsel cross-examined SDS's friend as follows:

> Q: And you said—I don't think you've ever said anything nice about [Price]. You said—it basically says lazy and I guess it was kind of ornery too; right? Bullyish I think you just said on the stand; right?
> A: Yes.
>
> Q: Okay. And that's from seeing him on two occasions and knowing that [SDS] told you that he hurt her; right?
> A: I'm not sure what you're asking.
>
> Q: Have you seen him other than that, just moving boxes?
> A: No.
>
> Q: Do you have any understanding of what his relationship was with [SDS]?
> A: Yes, I do.
>
> Q: Okay. Did they ever, like, I mean, co-habitate together?
> A: No.
>
> Q: They never lived together?
> A: No.
>
> Q: He's not a person she would let stay at her place?
> A: I believe that he slept on her couch from time to time, maybe once or twice.

3

Q: On[ce] or twice total?
A: Yes.

Price testified that he and SDS were in an ongoing "transactional" sexual relationship based on drug use. He testified that on the day in question, he and SDS engaged in consensual "doggy style" vaginal sex in the bathroom, and he claimed that he "incidentally" inserted his penis "into her anus." He denied committing any nonconsensual sexual acts and implied that SDS fabricated her sexual-assault allegation because he "wouldn't buy more drugs for her."

The jury found Price guilty as charged. The district court entered judgment of conviction and sentenced Price to serve 62 months in prison.

Price appeals.

## DECISION

Price argues that the prosecutor committed prejudicial plain-error by eliciting improper character testimony from SDS's friend describing Price as bullyish, manipulative, rude, disrespectful, and overpowering. Price concedes that he did not object to that testimony at trial. We therefore apply the modified plain-error standard applicable to unobjected-to prosecutorial misconduct. *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (adopting standard). Under that standard, the defendant must establish an error that is plain. *Id.* If the defendant meets this burden, the state must then prove that the error did not affect the defendant's substantial rights; that is, that there is no reasonable likelihood that the absence of the error would have had a significant effect on the jury's verdict. *Id.*

Generally, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Minn. R. Evid. 404(a). It is improper for a prosecutor to elicit inadmissible evidence, including improper character evidence. *State v. Harris*, 521 N.W.2d 348, 353-54 (Minn. 1994). Additionally, prosecutors must prepare their witnesses to ensure the witnesses are aware of the limits of permissible testimony. *State v. McNeil*, 658 N.W.2d 228, 232 (Minn. App. 2003).

Price's assertion of prosecutorial error that was plain has merit. However, we need not resolve that issue because the state has met its burden of showing that the alleged error did not affect Price's substantial rights. In making that determination, we consider several factors such as "the strength of the evidence" against Price, "the pervasiveness of the improper suggestions," and whether Price "had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007).

Although there were minor discrepancies in SDS's testimony, the defense cross-examined her regarding those inconsistencies. And as noted by the state, SDS immediately reported the sexual assault to the police and was consistent in her claim that Price forcibly penetrated her anus with his penis without her consent. SDS made the same claim to the responding officer, an investigator, the forensic nurse who examined SDS, and her friend who testified at trial.

In addition, the challenged question and answer constituted less than one-half of a page of transcript testimony and the prosecutor did not refer to the answer at any point during the state's closing and rebuttal arguments. *See State v. Epps*, 964 N.W.2d 419, 424

5

(Minn. 2021) (concluding that the defendant's substantial rights were not affected in part because the challenged statements constituted a minimal portion of the transcript); *State v. Peltier*, 874 N.W.2d 792, 803 (Minn. 2016) (concluding that there was no reasonable likelihood that the potentially improper evidence significantly affected the verdict in part because the prosecutor did not mention the challenged evidence in closing). Finally, the defense had an opportunity to rebut the challenged testimony during its cross-examination of SDS's friend. And that cross-examination minimized the force of the damaging testimony.

In sum, on this record we discern no reasonable likelihood that the absence of the alleged error would have had a significant effect on the jury's verdict. Because the alleged error did not affect Price's substantial rights, he is not entitled to relief under the modified plain-error standard of review.

**Affirmed.**