STATE of Minnesota, Respondent,

v.

Freda JAHNKE, Appellant.

STATE of Minnesota, Respondent,

v.

Harvey JAHNKE, Appellant.

No. C2-84-90, C4-84-91.

Court of Appeals of Minnesota.

July 31, 1984.

Hubert H. Humphrey, III, Atty. Gen., Arvid Wendland, Faribault County Atty., Blue Earth, for respondents.

C. Paul Jones, Minn. State Public Defender, Kathy King, Asst. State Public Defender, Minneapolis, for appellants.

Considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Appellants Freda and Harvey Jahnke appeal their intrafamilial sexual abuse convictions. Freda Jahnke was convicted of two counts of intrafamilial sexual abuse in the second degree in violation of Minn.Stat. § 609.3642, subd. 1(1) (1982), and two counts of intrafamilial sexual abuse in the first degree in violation of Minn.Stat. § 609.3641, subd. 1 and 609.05 (1982). Harvey was convicted of three counts of intrafamilial sexual abuse in the first degree in violation of Minn.Stat. §§ 609.3641, subd. 1(1), and 609.05 (1982), and two counts of intrafamilial sexual abuse in the second degree in violation of Minn.Stat. § 609.-3642, subd. 1(1), and 609.05 (1982). Appellants were jointly tried. Their separate appeals have been consolidated by order of this court. They contend they were denied a fair trial because of improper inquiry by the prosecutor while cross-examining Freda Jahnke into (1) details of her prior convictions; (2) her having been a victim of child sexual abuse; (3) a reference to a polygraph examination; and (4) a reference to their sexual problems and to a photograph previously ruled inadmissible. They also challenge the trial court's instruction on venue and claim the evidence was legally insufficient to convict them of the charges. Harvey Jahnke also claims that a 1976 felony theft conviction was improperly used in computing his criminal history score. We reverse and remand for a new trial or trials.

## FACTS

Freda and Harvey Jahnke were jointly tried on multiple counts of intrafamilial sexual abuse involving multiple sexual acts between Freda and her 12-year-old son by a former marriage, and between Harvey and Freda's ten-year-old daughter by a former marriage. At trial, Freda Jahnke testified; Harvey did not. Freda Jahnke was found guilty by a jury and sentenced to concurrent prison terms of 65, 34, 95 and 54 months; Harvey Jahnke was sentenced to concurrent prison terms of 54, 30, 44 and 113 months.

## ISSUE

Were appellants denied a fair trial?

## ANALYSIS

Appellants make several contentions which are claimed either individually or cumulatively to warrant a new trial because they were deprived of a fair trial. At the outset, we note that Freda Jahnke's testimony was on behalf of Harvey Jahnke as well as in her own defense. Her credibility and character were the subject of such extensive prosecutorial probing that any unfairness to her also tainted the trial of Harvey Jahnke as well. Any misconduct which occurred permeated the entire case. Harvey Jahnke did not testify; his defense was solely presented by the testimony of Freda Jahnke. The State's claim that he is without standing to assert violations which occurred during cross-examination of Freda Jahnke is without authority and flies in the face of the reality of this joint trial. Inasmuch as Harvey adopted Freda's version of the facts, any prejudicial cross examination of her also affected his right to a fair trial.

(1) On direct examination, Freda Jahnke acknowledged she was convicted in 1979 for arson, attempted arson and falsely reporting a crime. On cross-examination the following occurred:

Q: Mrs. Jahnke, are you lying about any of the testimony that you have given here?

A: No, sir, I'm not.

Q: Do you consider yourself a truthful person?

A: There has been times when I have evaded the truth, but I consider myself reasonably truthful, yes.

Q: Did you ever lie to an officer named Jerry Kabe? Think real hard.

A: If I did it would have to be during the arson.

Q: Well, let me see if I can refresh your recollection. Do you remember November 2, 1978, having anything to do with Deputy Kabe?

Over objection, the State was then allowed to inquire into the circumstances surrounding her conversation with Deputy Kabe. This inquiry explored several details of the 1979 convictions. The State was also allowed to call Deputy Kabe as a witness when Freda Jahnke failed to recall her conversations with Deputy Kabe.

Appellants maintain that inquiry into the specific details of a conviction is improper and that the evidence constituted improper use of character evidence of an accused. They also claim that the extrinsic evidence consisting of Deputy Kabe's testimony constituted further error.

■ Generally, inquiry into the facts underlying prior convictions is improper. *State v. Edwards,* 343 N.W.2d 269, 273 (Minn.1984); *State v. Knight,* 295 N.W.2d 592 (Minn.1980). Here, however, this prohibition conflicts with the rule that specific instances of misconduct of the defendant-witness may be inquired into on cross-examination at the discretion of the trial judge if it is found that such acts are relevant and probative of veracity, and the probative value outweighs the risk of undue prejudice, confusion of issues, or unnecessary delay. Rule 608(b), Minn.R.Evid. Misconduct relevant to veracity includes false statements. *State v. Krzywicki,* 327 N.W.2d 5, 6 (Minn.1982); *State v. Johnson,* 254 N.W.2d 114, 118, n. 3 (S.D.1977).

■■ This form of impeachment is generally discouraged in criminal cases because it tends to involve prejudicial mat-

ters. The scope of such evidence should be carefully limited. *See State v. Haney*, 219 Minn. 518, 18 N.W.2d 315 (1945); Thompson, *Evidence*, § 608.01 (1979). Here, no attempt was made to restrict any questioning by the prosecutor, who continually propounded questions regarding the events surrounding the arson investigation. Thus, although no error was committed by the prosecutor inquiring whether appellant Freda Jahnke lied to an officer investigating the claim of arson, the extensive inquiry into the details surrounding the events was collateral to the issue and was improper.

Further, the error was compounded by allowing Deputy Kabe to testify to the events surrounding Freda Jahnke's conversation with him. Kabe was called to testify after Freda Jahnke failed to recollect the details of her conversation with Kabe five years earlier. Rule 608(b) provides that specific instances of misconduct to attack a witness' credibility may not be proved by extrinsic evidence. *State v. Clark*, 296 N.W.2d 359, 368 (Minn.1980).

■■■ (2) The State, over objection, was allowed to inquire into the fact that Freda Jahnke was sexually abused as a child. Appellants contend that this amounted to inadmissible character evidence and was clearly more prejudicial than probative. Although defense counsel in closing argument contended that Freda Jahnke's admissions enhanced her credibility, appellants contend that this was not enough "to dispel the prejudice inherent in the common belief that former abuse victims tend to abuse their children."

The bench discussion reveals that the prosecutor only intended to ask the question of whether the accused was sexually abused as a child as a means of impeachment. He anticipated a denial and expected to rebut her testimony through extrinsic evidence, as the following bench discussion shows:

THE COURT: You going to ask her— what do you want to follow it with?

MR. WENDLAND (Prosecutor): Were you sexually abused by your father?

MR. JOHNSON: And I object, Your Honor.

THE COURT: Gee, I hate to bring that out, the parents are in the courtroom.

MR. WENDLAND: That's why it's so powerful she's going to lie about it.

THE COURT: I think the question whether she was an abused child is relevant, could be. Actually all the studies you read about on this subject show that people that abuse their children are themselves abused children, you know that.

MR. JOHNSON: Those studies are also inadmissible.

THE COURT: They are what?

MR. JOHNSON: They are also inadmissible. She's not—

THE COURT: We're talking about her, we're not talking about statistics.

MR. JOHNSON: Yes.

MR. WENDLAND: Well, I have the task of showing that this woman is a liar, which she is, and if I can't ask her the hard questions I'm never going to be able to do that.

THE COURT: Yeah, but that—

MR. WENDLAND: That's a hard question.

THE COURT: It sure is.

MR. WENDLAND: And she's going to lie about it, she can't do anything else. Her father is sitting right here.

THE COURT: This is one of those where you wonder if the prejudicial effect would outweigh the probative value.

MR. JOHNSON: I agree. I think it does.

The question posed by the prosecutor is serious prosecutorial misconduct in this case. The question has no proper impeachment value. Asking a question solely for the purpose of advancing an improper inference to the jury is unethical. DR 7–106(C)(2), Code of Professional Responsibility. *State v. White*, 295 Minn. 217, 223, 203 N.W.2d 852, 857 (1973). Moreover, as already discussed, extrinsic evidence would not have been allowed upon a denial from the witness. Rule 608(b), Minn.R.Evid.

The prosecutor wanted the question asked in the hope that the jurors would use their common perception that former abuse victims tend to abuse their children. The Minnesota Supreme Court has already ruled that evidence of "battered parent" syndrome or evidence establishing the character of a defendant as a battered parent is inadmissible unless the defendant first raises the issue. *State v. Loebach*, 310 N.W.2d 58 (Minn.1981). To ask a defendant accused of incest whether she was sexually abused as a child is highly prejudicial and cannot be condoned. The argument by defense counsel in summation was clearly an attempt at making the best of a harsh ruling, and there is no merit to the State's claim of waiver.

(3) During the State's cross-examination of Freda Jahnke about the details surrounding her prior convictions, the following question was asked:

Q. Do you recall Jerry Kabe asking you, kind of coaxing you to eliminate yourself as a suspect [in the 1979 arson incident] by taking a polygraph or lie detector test?

Over an objection, the trial court denied a request for a mistrial and, out of the presence of the jury, admonished the prosecutor for referring to the polygraph test. The trial court denied defense counsel's request for a cautionary instruction because the court believed it would aggravate the error. The trial court then sustained the objection.

Appellants contend the improper reference to the polygraph test constituted blatant prosecutorial misconduct because the prosecutor knew this was an inadmissible matter, *see State v. Mack*, 292 N.W.2d 764, 767–68 (Minn.1980), and should not have asked the question in the presence of the jury.

The State contends, on the other hand, that the question neither suggested that Freda Jahnke had taken a polygraph nor what the results were. Further, the State argues it was not prejudicial since the events surrounding the polygraph examination took place five years earlier in reference to a separate offense. This is a disingenuous argument. The improper question appears deliberate, forcing the defense attorney to object to the answer before the jury. It is tantamount to prejudicial misconduct. Since the jury was told Freda Jahnke confessed to the crime, by asking this question, an inference is suggested to the jurors that she was given a polygraph test and failed it. Again, we cannot condone such prejudicial questions by the prosecutor.

(4) Appellants' other primary contention deals with the prosecutor's inquiry into the sexual problems of Freda Jahnke and her husband and a reference to a photograph previously ruled inadmissible. Over objection, Freda Jahnke testified on cross-examination that she and Harvey had some sexual problems. They consulted with their pastor and reached an agreement whereby Freda Jahnke would agree to engage in a certain practice eight times a year. The prosecutor then asked:

Q: When you were doing that practice on one occasion did you have somebody come in and take a picture of you?

MR. JOHNSON [Freda Jahnke's defense counsel]: Your Honor, may I approach the bench?

THE COURT: Come up. (whereupon, the following proceedings were had at the bench)

MR. JOHNSON: Your Honor, again, the County Attorney knows the picture is not admissible with reference to the picture. Therefore, I would submit it is not admissible. I would ask that the question be stricken and the jury told to disregard the question.

THE COURT: I've already told you the picture wasn't going to come in. I don't think you should have referred to it.

MR. WENDLAND: I thought, Your Honor, that your ruling was that you didn't know what the picture had to do with anything and until you heard the evidence you could not make a ruling on it.

THE COURT: I said in so many words, and I think they are in the record, the prejudicial effect of those pictures outweigh the probative value. That's not an indefinite statement at all. If you want the reporter to look it up I'll have him do it.

MR. WENDLAND: It doesn't matter, except ruling now. I have to, and it doesn't make—well, it doesn't make all that much difference what you said before, because I understand what you are saying now.

THE COURT: Well, the reason I'm referring to it is because I did tell you you couldn't use it, the picture, and I don't think reference should have been made to it. So I'm going to instruct the jury about that.

In the presence of the jury, the court sustained the objection and told the jury to disregard any reference to any photographs.

■■■ While admission of evidence regarding the sexual problems of Freda Jahnke and her husband may have had the potential to cause the jury to deal with the issue on an emotional level beyond any probative value, *State v. Carlson*, 268 N.W.2d 553 (Minn.1978), no timely objection was made to this question. *State v. Beeks*, 311 N.W.2d 496 (Minn.1981). However, we are concerned over the reference to the photograph. This photo was previously ruled inadmissible. We are not persuaded the reference to the photograph was inadvertent. As the colloquy with the court indicates, the trial court's ruling was clear. This is another example of prosecutorial misconduct which appears deliberate. The elicitation of testimony of pictures of Harvey Jahnke's preferred sexual practice in a sexual abuse case reeks of a deliberate appeal to the prurient interests of jurors. As the Minnesota Supreme Court stated:

> [I]f prosecutors * * * persist in trying to inject into a trial indirectly matters which they know they cannot introduce directly the only solution is to let them try the case over.

*State v. Flowers*, 261 N.W.2d 88, 89 (Minn. 1977), quoting *State v. Gegen*, 275 Minn. 568, 569, 147 N.W.2d 925, 926 (1967).

■■■ In sum, we believe the cumulative effect of errors occurring during trial constituted a denial of appellants' right to a fair trial. *See State v. Caldwell*, 322 N.W.2d 574, 592 (Minn.1982); *State v. Underwood*, 281 N.W.2d 337, 344 (Minn.1979); *State v. Hawkins*, 260 N.W.2d 150, 157 (Minn.1977). We do not agree with the State that all of the errors were merely harmless. Moreover, we cannot say with certainty beyond a reasonable doubt that the prosecutorial misconduct here was harmless. *State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974).

Appellants also raise a question regarding the venue instructions which we need not review. We note, however, that on retrial, a more carefully worded instruction on venue would be appropriate to avoid any possible objections in the future.

Because we are remanding for a new trial, we need not address the claim regarding the sufficiency of the evidence or Harvey Jahnke's sentencing claim.

**DECISION**

Appellants' convictions are reversed because of the cumulative effect of several fundamental errors during trial, mostly involving prosecutorial misconduct. Prosecutors in sexual abuse cases must abide by the highest behavior. These cases inescapably evoke an emotional reaction, and any emotive appeal to jurors is likely to be highly prejudicial.

Reversed and remanded for new trial.