STATE of Minnesota, Respondent,

v.

Eric W. BALENGER, Appellant.

No. C0-84-153.

Court of Appeals of Minnesota.

Dec. 31, 1984.

Review Denied Mar. 13, 1985.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., Asst. Atty. Gen., St. Paul, Mary J. Theisen, Sp. Asst. Atty. Gen., St. Paul, Marvin E. Ketola, Carlton County Atty., Carlton, for respondent.

C. Paul Jones, State Public Defender, Kathy King, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Appellant Eric Balenger was convicted of second degree murder (felony murder) in violation of Minn.Stat. § 609.19(2) (1982). Appellant claims the State's case was insufficient to sustain his conviction. He also contends items were improperly seized and admitted into evidence and claims he was denied a fair trial because of the admission of prejudicial evidence. Finally, he argues he is entitled to a reduction of his sentence pursuant to a reduction of the Minnesota Sentencing Guidelines presumptive sentence for felony murder, effective November 1, 1983. We affirm appellant's conviction but remand to the trial court for consideration of appellant's resentencing request.

## FACTS

The evening of March 1, 1983, appellant Eric Balenger, a 25 year old resident of Superior, Wisconsin, was at the Cove Bar in Superior drinking beer, playing pool, and competing in a dance contest. Patty Heaslip, an 18 year old high school senior from Esko, Minnesota, had driven the 16 miles to Superior and met Pat Herrick at the Cove Bar. Around closing time Heaslip was preparing to leave with Herrick to go to Herrick's sister's apartment when she saw appellant arguing with Rick Antonich and tried to calm appellant down. Appellant left the Cove with Heaslip and Herrick and, with appellant driving Heaslip's car, the three went to the apartment. Finding no one there they drove to a party where appellant smoked marijuana.

Heaslip, Herrick, and appellant later returned to Herrick's sister's apartment, with appellant driving. At the apartment appellant and Heaslip went into the bathroom for about 20 minutes. According to appellant they engaged in sexual intercourse in the bathroom and again in the bedroom.

Heaslip, Herrick, and appellant left the apartment about 5:00 a.m. because Heaslip said she had to go to school the next morning. Appellant drove the car and dropped off Herrick.

Heaslip was not seen again until March 7, 1984, when her body was found in a wooded area off a remote rural road in Carlton County, about a mile west of I–35; the cause of death was determined to be asphyxia, caused by strangulation. Her car was found in St. Paul, Minnesota, a few blocks from appellant's grandmother's house. Appellant's fingerprints were found on the rearview mirror.

The State alleged that appellant strangled Heaslip after they dropped off Herrick and dumped her body into the snow. Appellant then drove Heaslip's car to St. Paul where he left it. He then visited relatives and returned to Superior by bus.

At trial appellant testified that he was dropped off by Heaslip at his girlfriend's home in Superior where he also lived. He began thinking of his fight with Rick Antonich and could not sleep. He packed a blue vinyl tote bag, leaving in a 28 pound set of weights which he had brought to the Cove to warm up for the dance contest. He then left for St. Paul at 6:00 a.m. hitchhiking. His testimony would indicate that it took him about five hours to reach St. Paul. His last of three alleged rides dropped him off two blocks from the bus depot where he called his girlfriend collect. Telephone company records indicated, however, that he made that call at 9:34 a.m., much less than five hours after he left Superior. He then walked to his grandmother's house near the capitol. After visiting with his father he returned by bus.

Appellant's version of the facts at trial contradicted statements he made before trial. Those statements were offered into evidence by the State. Appellant had told Christina Sabo shortly after his return to Superior he couldn't remember how he got to St. Paul on March 2. Also, during an interview with a BCA investigator on March 9, appellant denied being with Heaslip the evening of March 1 and said that he

was dropped off at his home in Superior by a buddy. At a second interview with a BCA investigator on March 15, appellant said that he went to a party with a George West and Heaslip was not there. He said he left and went to a second party which Heaslip was at but he left because he didn't know anyone and people there were "bikers." He indicated he returned home and slept on the couch. He denied ever driving Heaslip's car and denied going to Herrick's sister's apartment with Herrick and Heaslip and denied any sexual contact with Heaslip. Later in this interview he changed his story and admitted he was with Heaslip, but denied driving her car. He denied having sexual intercourse with Heaslip, although he admitted there was some kissing and rubbing and touching. He also told investigators he hitchhiked to St. Paul about 6:00 a.m.

At trial appellant testified that he had lied earlier but was now telling the truth. He admitted he had sexual intercourse with Heaslip twice that evening, admitted he had driven Heaslip's car, and admitted Herrick was the first person taken home.

Michael Brown, in jail for D.W.I., testified that in a conversation he had with appellant in jail, appellant said he couldn't remember how he got to St. Paul on March 2. Upon Brown's question about fingerprints on the Heaslip car, appellant said "no, maybe the radio." Brown said "what about the rearview mirror?" and appellant said, "he hadn't thought about that."

Dr. Kundel, the deputy medical examiner who performed the autopsy on Heaslip, testified that Heaslip had died between 24 hours and five days before discovery of her body. He also determined that sperm had been deposited in Heaslip less than six to eight hours prior to her death. BCA technicians analyzed the sperm and found it consistent with having come from appellant.

Appellant was found not guilty of second degree murder for intentionally killing Heaslip, but guilty of second degree (felony) murder for causing Heaslip's death while committing or attempting to commit a felony offense (assault).

## ISSUES

1. Was the evidence sufficient to convict appellant of second degree (felony) murder?

2. Was the set of 28-pound weights unconstitutionally seized and improperly admitted into evidence?

3. Was appellant denied a fair trial?

4. Is appellant entitled to an automatic reduction of his sentence pursuant to a reduction in the presumptive sentence for felony murder?

## ANALYSIS

### I.

■ We have reviewed the record and find there was sufficient evidence which enabled the jury to conclude that appellant murdered Heaslip while committing an assault on her. The State's evidence was circumstantial, but all the circumstances were consistent only with guilt and inconsistent with any reasonable hypothesis of innocence. *State v. Threinen*, 328 N.W.2d 154, 156 (Minn.1983). The physical evidence is strong, including the location of the car, the fingerprints of the rearview mirror, and the analysis of the sperm found in Heaslip's body.

Appellant's claim that he hitchhiked to St. Paul must have been disbelieved by the jury. Appellant's hitchhiking story did not make sense since the trip allegedly covered the time between 6:00 a.m. and 9:34 a.m., yet under his testimony the hitchhiking took over five hours. The jury could have found it illogical to hitchhike with 28 pound weights, especially since appellant testified he planned on moving to St. Paul within the next few days.

The jury also was presented evidence showing appellant had told numerous stories to investigators. These statements were not merely impeaching, but were used as substantive evidence. Viewing the evidence in the light most favorable to the

verdict, the evidence supports the conviction.

## II.

Appellant contends the omnibus court erred in ruling that the 28 pound weights were constitutionally seized and admissible at trial. A search warrant was executed at appellant's grandmother's residence in St. Paul on March 15, 1983, where appellant was residing. The warrant was obtained to search for keys to the Heaslip vehicle, woman's clothing, Patty Heaslip's wallet, and other items.

The weights, although not named in the search warrant, were in plain view to the officers executing the search warrant. The seizure of the weights was thus constitutional. *Cf. State v. Sherwood,* 352 N.W.2d 831, 833 (Minn.Ct.App.1984). *See Illinois v. Andreas,* 463 U.S. 765, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983).

## III.

Appellant claims he was denied a fair trial.

1. Appellant asserts the admission of testimony that he entered a "dance" or "male leg" contest the evening of March 1, 1983, should have been suppressed as unfairly prejudicial. We disagree. This evidence was relevant and there is nothing showing it was unfairly prejudicial.

2. Appellant also claims the prosecutor improperly enhanced Rick Antonich's testimony by asking if Antonich filed criminal charges against appellant after their confrontation. Defense counsel objected to this question and the trial court sustained the objection. This lone remark, in a trial lasting two weeks, does not approach the level of prejudice required to obtain a new trial. *See State v. Jahnke,* 353 N.W.2d 606 (Minn.Ct.App.1984).

## IV.

Appellant was sentenced to the presumptive sentence of 121 months, the high end of the guidelines range for a severity level X offense and a criminal history score of 0. On November 1, 1983, the sentencing guidelines reclassified felony murder as a severity level IX offense, reducing the presumptive sentence range to 102 to 108 months. *See State v. Garasha,* 358 N.W.2d 657, n. 1 (Minn.1984).

We remand to the trial court for resentencing. *State v. Cromey,* 348 N.W.2d 759, 760–61 (Minn.1984); *See State v. Pickett,* 358 N.W.2d 38 (Minn.1984).

## DECISION

Evidence was sufficient to convict appellant of felony murder. The set of 28 pound weights was properly seized and admitted at trial and appellant received a fair trial. The case is remanded so that the trial court may consider appellant's resentencing request, but in all other respects is affirmed.

Affirmed and remanded.