STATE of Minnesota, Respondent,

v.

Michael A. DANIELSON, Appellant.

No. C6–85–667.

Court of Appeals of Minnesota.

Nov. 19, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Stephen C. Rathke, Crow Wing County Atty., Brainerd, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Appellant Michael A. Danielson appeals from convictions of first degree criminal sexual conduct and first degree intrafamilial sexual abuse. After a jury trial, Danielson was sentenced to the custody of the Commissioner of Corrections for a period of 54 months with sentence stayed pending

this appeal. We reverse and remand for a new trial.

## FACTS

Appellant Michael Danielson (Danielson) married Teri Danielson in 1980. In March of 1984, P.K.D., Danielson's stepdaughter, then age 9, told Teri that Michael had sexually assaulted her in early 1982 when the family was living in Jenkins, Minnesota. Teri reported P.K.D.'s allegation to La-Crosse County authorities.

P.K.D. repeated her allegation of sexual abuse to a social worker, and a member of the Crow Wing County Sheriff's Office who made a videotape of an interview with P.K.D. Danielson was arrested and charged by complaint.

At an omnibus hearing, Danielson moved to dismiss the complaint for lack of probable cause. The videotape was shown, and Danielson's trial counsel moved to strike "all references to any incidents with some other individuals." The prosecutor did not object to that motion. A Crow Wing County grand jury returned an indictment; the trial court dismissed the complaint and proceeded on the indictment.

At trial P.K.D. testified that Danielson inserted his finger into her vagina twice and asked her "to just put my mouth on his weiner", which she refused to do. Her testimony was corroborated by Teri Danielson, who related the hearsay statements made by P.K.D. in March, 1984. The social worker and officer also testified to the statements made by P.K.D. to them.

Danielson denied any wrongdoing and implied that P.K.D. and Teri had fabricated the charges because of a custody dispute.

The videotaped interview of P.K.D. was offered as rebuttal evidence to which Danielson's attorney objected:

"We would object to that as not proper rebuttal testimony. There is no particular utility in simply rehearsing and reviewing in a fashion that is nothing more than subverting the purpose of having all live testimony in the courtroom. The statement that was made to Sgt. Ball was not made under oath, and we object to it.

The trial court ruled that the videotape was admissible to corroborate P.K.D.'s testimony although the court had not seen the videotape before it was shown to the jury. The jury was so instructed and told that the statement had not been made under oath.

The videotape contained allegations that Danielson sexually abused his two stepsons, his daughter, fought with and hurt Teri, drank beer, smoked pot, gave P.K.D. alcohol and that the social worker and the Crow Wing County officer believed P.K.D.'s allegations. Defense counsel did not object to any portion of the videotape while it was being played.

At the end of the tape, the trial court requested a conference in chambers with both counsel and Danielson. Defense counsel's motion for a mistrial was denied because the trial court felt it could cure the error:

> I am going to give a curative instruction. I am going to explain to the jury that they did hear materials that were improper for their consideration or deliberation and that I am going instruct them to disregard the tape in its entirety. I am going to then send them home with the usual closing instruction and with the further instruction that when they come back, I will be conducting a short voir dire of them individually in Chambers to determine whether or not the Court's instruction has been followed.

The next day, each juror indicated that they could follow the court's instruction to disregard the entire videotape. The court further instructed the jury to "disregard all evidence which I have ordered stricken or have told you to disregard". The jury found Danielson guilty on both charges. Danielson's motion for a new trial was denied because the trial court concluded that the admission of the videotape did not deprive him of a fair trial.

## ISSUE

Did the erroneous admission of a videotaped statement deprive appellant of a fair trial?

## ANALYSIS

### I.

In *State v. Sha,* the Minnesota Supreme Court reversed a conviction because the prosecutor had elicited inadmissible testimony of a prior guilty plea. *State v. Sha,* 292 Minn. 182, 193 N.W.2d 829 (1972). The court commented on the duty of the prosecutor to ensure that a defendant receives a fair trial.

> The prosecutor has an overriding obligation, shared by the court, to see that defendant receives a fair trial, however guilty he may be. A prosecutor's duty is not simply to convict, but to do justice.

*Id.* at 185, 193 N.W.2d at 831.

In *State v. Jahnke,* 353 N.W.2d 606 (Minn.Ct.App.1984) an intrafamilial sexual matter, the prosecutor made improper inquiry into (1) a defendant's prior convictions, (2) her having been a victim of child sexual abuse, (3) a polygraph test, and (4) an inadmissible photograph. *Id.* at 607. In reversing, this court stated that:

> Prosecutors in sexual abuse cases must abide by the highest behavior. These cases inescapably evoke an emotional reaction, and any emotive appeal to jurors is likely to be highly prejudicial.

*Id.* at 611.

In *State v. Haney,* 222 Minn. 124, 23 N.W.2d 369 (1946), defense counsel made no objection to improper argument by the prosecutor. The Minnesota Supreme Court held that:

> Had exceptions been taken to these arguments, there would be no question as to the necessity of reversing the order denying a new trial.

> \* \* \* \* \* \*

> Nevertheless, the prejudice to defendant's rights was manifest, and the question arises as to whether, in the absence of exceptions, the trial court of its own motion should have intervened to protect defendant's rights. That is the crucial question. We think that it should have done so. The argument went so far in language calculated to inflame the prejudices of the jury that it was the duty of the court to intervene sua sponte.

*Id.* at 129–30, 23 N.W.2d at 372. The court observed that "the record presents a clear question of fact as to defendant's guilt. Were there no errors prejudicial to defendant, we would affirm." *Id.* at 125, 23 N.W.2d at 370.

 Here the prosecutor knew that the videotape contained both clearly inadmissible and highly prejudicial statements about Danielson. At the omnibus hearing, the same prosecutor made no objection when defense counsel moved to strike portions of the videotape. The prosecutor gave assurances to defense counsel that he would not make reference to any conduct of Danielson involving other alleged victims. The prosecutor could not have asked P.K.D. direct questions on these matters, and it was improper for him to bring this same evidence before the jury by means of the videotaped interview. The trial court should have reviewed the tape prior to its showing to the jury.

 The remaining question is whether the curative efforts by the trial court sufficiently mitigated any prejudicial effects of the videotape.

> Whether a new trial should be granted because of misconduct of the prosecuting attorney is governed by no fixed rules but rests within the discretion of the trial judge, who is in the best position to appraise its effect. The court's determination should be reversed on appeal only where the misconduct, viewed in the light of the whole record, appears to be inexcusable and so serious and prejudicial that defendant's right to a fair trial was denied.

*State v. Wahlberg,* 296 N.W.2d 408, 420 (Minn.1980) (citations omitted).

> As a general rule, any error which may occur by reason of the erroneous admission of evidence is cured when that evidence is stricken from the record and accompanied by a clear instruction to disregard so that the evidence is not put to use by the jury. If, however, evidence is of such an exceptionally prejudicial char-

acter that its withdrawal from the jury cannot remove the harmful effects caused by its admission, a new trial should be granted.

*State v. Bergland,* 290 Minn. 249, 187 N.W.2d 622 (1971). The videotape was initially admitted only to corroborate P.K.D.'s testimony. After the court realized that the videotape made reference to inadmissible matters it made great efforts to reduce prejudice. The court promptly instructed the jury to disregard it, interviewed each juror individually to determine if that instruction could be followed, and gave an additional instruction to the jury that stricken evidence should not affect their decision. In ruling on the motion for a new trial, the trial court concluded, after lengthy and deliberate analysis, that the jury was not substantially prejudiced against Danielson by the erroneous admission of the videotape.

We cannot agree. The prejudicial content of the videotape was such that no curative instructions to the jury could mitigate its effect. The tape contained allegations of several other crimes, some of a despicable and socially unacceptable nature. We are also concerned with the prosecutor's deliberate conduct in bringing this evidence before the jury. *See Jahnke,* 353 N.W.2d at 611. As the Minnesota Supreme Court stated in *State v. Gegen,* 275 Minn. 568, 569, 147 N.W.2d 925, 926 (1967):

> If prosecutors and police officers persist in trying to inject into a trial indirectly matters which they know they cannot introduce directly the only solution is to let them try the case over.

Because we are remanding for a new trial, we need not address the claim of insufficiency of evidence or ineffective assistance of counsel.

### DECISION

Appellant was denied a fair trial by the erroneous admission of a highly prejudicial videotape. His convictions must be reversed.

Reversed and remanded for new trial.