*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1828**

State of Minnesota,
Respondent,

vs.

Joseph Bullhead,
Appellant.

**Filed October 11, 2016
Affirmed
Connolly, Judge
Dissenting, Randall, Judge\***

Hennepin County District Court
File No. 27-CR-14-16040


Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijo, Assistant
Public Defender, St. Paul, Minnesota (for appellant)


        Considered and decided by Worke, Presiding Judge; Connolly, Judge; and Randall,

Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges his conviction of second-degree criminal sexual conduct, arguing that the district court erred in admitting relationship evidence under Minn. Stat. § 634.20 (2014) and that a new trial is required because the relationship evidence significantly affected the jury's verdict. Because we see no error in the admission of the evidence and no undue prejudice to appellant, we affirm.

## FACTS

Appellant Joseph Bullhead is the stepfather of complainant N.E. The conduct forming the basis for his second-degree criminal sexual conduct conviction occurred when N.E. was in eighth grade. N.E. testified that appellant "called [her] into the living room . . . and . . . asked [her] to lay on [her] back so [she] did, and he put his hand up [her] basketball shorts and just started touching [her]." When questioned, N.E. stated that appellant touched her bare vagina. Appellant's conduct continued for "a couple of minutes." N.E. further testified that she did not report what happened because she was fearful that appellant would hurt her and this fear came from his abuse of her when she was in kindergarten.

Prior to trial, the state moved for an order granting admission of relationship evidence of appellant's actions against immediate family members pursuant to Minn. Stat. § 634.20. The district court granted the motion, concluding that it did not "believe that the probative value is substantially outweighed by the danger of unfair prejudice . . ." and the relationship evidence "helps put things into context." Further, the district court "agree[d]

with the [s]tate that a cautionary limiting instruction can put the information in proper context and the jury can be informed that they cannot convict [appellant] of any allegation involving [N.E.] simply if—by evidence that he might have engaged in inappropriate conduct with [R.E.]."

At trial, there were several instances of relationship evidence admitted over objection. After the state's opening argument, the district court stated:

> Members of the [j]ury, I'll likely give this instruction to you during the course of the trial as well, but when you consider the allegations against [appellant] it's limited in time and scope, and you may hear testimony about other alleged incidents. Those allegations are not what [appellant] is on trial here for and it would be improper for you to convict him on the charged offense based upon belief you have on the others, but the other evidence can be—or testimony can be provided to you so you can put things in proper context. And I'll give you further direction with regard to that.

During the prosecution's case in chief, N.E. was called to testify. Prior to N.E.'s testimony, the district court gave the following instruction:

> [S]ome of the testimony that you're going to receive from [N.E.] and . . . potentially other witnesses might talk to allegations regarding . . . [R.E.] or regarding [N.E.] at other times . . . [is] not evidence . . . for the offense for which [appellant is] charged. . . . [I]t really is important that you understand that you cannot convict [appellant] based upon what you think might have occurred on other occasions, but focus on the charged offenses. . . . [I]t's important that you use it for the limited purpose, and it's to assist you in determining whether or not [appellant] committed the act or acts with which he actually is charged in this case. It's not to prove [appellant's] character or to prove that he acted in conformity with that character during the dates in the complaint.

3

N.E., who began living with appellant at the age of four, testified to being physically abused while she was in kindergarten. N.E. described the abuse "[l]ike bruises or just being hit, I guess." N.E. also stated that appellant had "put [his penis] in [her] mouth" when she was in kindergarten. At this time the district court gave the jury a cautionary instruction.

N.E. also provided relationship evidence when she testified to the events of May 31, 2014. Shortly before May 31, 2014, appellant and N.E.'s mother grounded N.E. On May 31, 2014, N.E. was home alone with appellant when appellant came into N.E.'s room and wrapped his hands around her waist. N.E. testified that appellant "asked [her] if [she] would [have sex] with him." N.E. testified that "[appellant] said that he could have sex with me and I [could] stay home and still be loved by everyone, including my mom, or I could get shipped to boarding school[,]" and "[appellant] had told me that when I was younger he and my sister [R.E.] were in the next room having sex." The district court informed the jury that the limited purpose of the evidence was "to assist [the jury] in determining whether [appellant] committed the act with which he's charged, not for any other purpose. It would be improper for [the jury] to use it for another purpose. It's not to prove the character of [appellant] or that he acted in conformity with it."

R.E., N.E.'s older sister by six years and appellant's stepdaughter, also provided relationship evidence. R.E. testified that she had sex with the appellant while she was in seventh grade. Right after R.E.'s statement, the court reminded the jury of the previously given jury instruction regarding relationship evidence. R.E. explained that appellant used his hand to touch her bare vagina three to five times. R.E. further testified that all of these incidents occurred at the apartment where R.E., N.E., and appellant resided. R.E. also

4

testified about a time when she was bent over the corner of a bed and appellant held a knife to her throat threatening to cut R.E. if she "tighten[ed] up." R.E. stated appellant proceeded to move his penis up and down R.E.'s bare butt and appellant tried to put his penis in her anus "but it wouldn't go in." The district court again gave cautionary instructions regarding relationship evidence.

On June 3, 2014, R.E. met N.E. at N.E.'s high school to talk about past abuse in the presence of a school social worker.[1] N.E. talked about the incidents occurring on May 31 and when she was in eighth grade. The next day, June 4, 2014, N.E. met with a police officer and child-protection worker. The interview was recorded and played for the jury at trial.

After the recorded interview between N.E. and the police was played, the district court reminded the jury that "any allegations outside the time period . . . referenced in the complaint and the charge . . . [are] not being offered to prove [appellant] acted in conformity with [them] on the dates in question or anything else and you can't convict him based upon any allegations outside the timeframe we're talking about."

The district court also gave a final cautionary instruction prior to closing arguments:

> As I told you at various portions of the trial, the State has introduced evidence of allegations that go beyond the allegations for which [appellant] is charged. Those are allegations between [appellant] and [R.E.], as well as acts alleged to have occurred either in kindergarten or 8th grade between [appellant] and [N.E.]. As I told you at the time this evidence was offered, it was admitted for the limited purpose

---

[1] M.M.-B., appellant's biological daughter and N.E.'s step-sister, was also present during this meeting. When she testified at trial regarding the purpose of the meeting, the district court gave another cautionary instruction.

of assisting you in determining whether [appellant] committed those acts with which he's charged in this case. This evidence is not to be used as proof of the character of [appellant] or that he acted in conformity with such character. [Appellant] is not being tried for and may not be convicted of any offense other than the charged offense. You are not to convict [appellant] on the basis of any other occurrence.

Following N.E.'s interview with the police, appellant was charged with one count of second-degree criminal sexual conduct in regard to her.[2] After his July 2015 trial, the jury found him guilty, and he was sentenced to 48 months in prison, stayed for five years, with a conditional release period of ten years. Appellant was placed on probation for five years and was required to serve 365 days in jail.

## D E C I S I O N

Appellant argues that the district court abused its discretion by admitting relationship evidence pursuant to Minn. Stat. § 634.20, and therefore, this court should grant a new trial.[3] We review the district court's evidentiary ruling for an abuse of discretion. *State v. Matthews*, 779 N.W.2d 543, 553 (Minn. 2010). Appellant has the

---

[2] Appellant was also charged with one count of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct in regard to R.E. He moved to sever those charges and the district court granted his motion. In June 2016 appellant was acquitted of fourth-degree criminal sexual conduct against R.E. On September 26, 2016 the state dismissed the remaining count of second-degree criminal sexual conduct against R.E.

[3] Appellant, in his *pro se* supplemental brief, asserts that "this is a *Brady* violation." "An assignment of error in a brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection." *State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) (quotation omitted), *aff'd*, 728 N.W.2d 243 (Minn. 2007). Appellant's mere assertion of a *Brady* violation without support is insufficient, and we do not consider this issue.

burden of establishing that the [district] court abused its discretion and that he was thereby prejudiced. *See State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

Minn. Stat. § 634.20 states:

> [e]vidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. "Domestic conduct" includes, but is not limited to, evidence of domestic abuse . . . . "Domestic abuse" and "family or household members" have the meanings given under section 518B.01, subdivision 2.

"Domestic abuse" is defined as committing the following against a family or household member by a family or household member:

> (1) physical harm, bodily injury, or assault;
> (2) the infliction of fear of imminent physical harm, bodily injury, or assault; or
> (3) . . . criminal sexual conduct. . . .

Minn. Stat. § 518B.01, subd. 2(a) (2014). "'Family or household members' means: . . . (2) parents and children; . . . (4) persons who are presently residing together or who have resided together in the past . . . ." *Id.*, subd. 2(b) (2014).

The district court's decision to admit relationship evidence under Minn. Stat. § 634.20 in a domestic-abuse prosecution is reviewed for an abuse of discretion. *See State v. Fraga*, 864 N.W.2d 615, 627 (Minn. 2015) (holding that Minn. Stat. § 634.20 is a rule of evidence); *State v. Loving*, 775 N.W.2d 872, 879 (Minn. 2009) (stating "[w]e review a district court's evidentiary ruling for an abuse of discretion."). Relationship evidence is treated differently than other "collateral" *Spreigl* evidence partly because "[d]omestic

7

abuse is unique in that it typically occurs in the privacy of the home, it frequently involves a pattern of activity that may escalate over time, and it is often underreported." *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004). Therefore, the procedural requirements of Minn. R. Evid. 404(b) do not apply to relationship evidence admitted under section 634.20. *State v. Meyer*, 749 N.W.2d 844, 849 (Minn. App. 2008).

Appellant argues that "any probative value of the evidence regarding R.E., N.E. and appellant was outweighed by its potential for unfair prejudice." Appellant challenges the relationship evidence relating to "appellant's alleged conduct toward R.E. [that] was admitted through the testimony of both N.E. and R.E." and when "the jurors heard additional relationship evidence about N.E."

### A. Probative Value

Appellant contends that "the relationship evidence in this case had little, if any, probative value because it did not assist the jury in judging the credibility of the principals in the relationship" and this evidence should not be allowed. However, the district court did not "believe that the probative value is substantially outweighed by the danger of unfair prejudice."

"[E]vidence of domestic conduct by the accused against family or household members other than the victim may be admitted pursuant to Minn. Stat. § 634.20 . . . ." *Fraga*, 864 N.W.2d at 627. It is undisputed that the testimony offered by N.E. and R.E. constituted evidence of domestic conduct and that both N.E. and R.E. are family members. *See* Minn. Stat. § 634.20 (defining "domestic conduct" in part as "evidence of domestic abuse"); Minn. Stat. § 518B.01, subd. 2 (2014) (defining family or household members).

8

The past incidents between N.E. and appellant and R.E. and appellant are highly probative because they show evidence of similar conduct. Appellant's conduct is relevant because he used his authority as stepfather in the abuse of R.E. and of N.E. Evidence offered by R.E. regarding her abuse as a middle-school-age child is relevant because, at the time the abuse at issue occurred, N.E. was a middle-school-age child. The testimony concerning appellant's use of threats to convince N.E. and R.E. not to report the abuse is relevant because, here, appellant threatened N.E. with consequences if she reported his attempted abuse. We conclude that there is significant probative value in the relationship testimony of both N.E. and R.E.

### B. Unfair Prejudice

Unfair prejudice "is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted).

Appellant argues that the incidents described in the relationship evidence "[were] more egregious than the charged offense[] [and] likely [inflamed] the jury's passion against appellant." Appellant relies on *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006), noting that prior bad act evidence may improperly suggest "that the defendant has the propensity to commit the crime or that the defendant is a proper candidate for punishment for his or her past acts." We conclude that *Ness* is distinguishable. *Ness* involved a challenge to evidence of sexual misconduct with a boy around the same age as the victim. *Ness*, 707 N.W.2d at 680. *Ness* did not deal with domestic abuse. Further, the admitted relationship

9

evidence in *Ness* "occurred 35 years before the charged offense, far beyond the time gap in any case where [courts] have upheld the admission of other-acts evidence." *Id.* at 689. Here, the relationship evidence goes back 12 or 13 years—when N.E. was in kindergarten or when R.E. was in seventh grade—and the charged incident in this case occurred between five and eight years ago—when N.E. was in eighth grade.

We also conclude that the relationship evidence presented here was not unfairly prejudicial because of the cautionary instructions repeatedly given by the district court. "A district court should instruct the jury regarding the proper use of relationship evidence presented under section 634.20 both when the evidence is received and in the final jury instructions." *State v. Barnslater*, 786 N.W.2d 646, 653 (Minn. App. 2010). "A district court's limiting instruction lessens the probability of undue weight being given by the jury to the evidence." *State v. Ware*, 856 N.W.2d 719, 729 (Minn. App. 2014) (quotation omitted). "We presume that jurors follow a judge's instructions." *State v. Miller*, 573 N.W.2d 661, 675 (Minn. 1998).

The district court properly issued all necessary cautionary jury instructions regarding the relationship evidence, including an instruction after the prosecution's opening statement, multiple instructions during the testimony of N.E. and R.E., and an instruction before closing argument.[4] The district court also gave trial counsel the

---

[4] Although at closing argument the district court gave the instruction in CRIMJIG 2.01, generally used for *Spreigl* evidence, rather than CRIMJIG 2.07, which is properly used in cases of section 634.20 relationship evidence, we conclude that this error was harmless. There were no negative effects from cautioning a jury that "[t]his evidence is not to be used to prove the character of the defendant or that the defendant acted in conformity with such character." 10 *Minnesota Practice*, CRIMJIG 2.01 (2015). Had the proper CRIMJIG been

opportunity to "propose language of [their] own" for a jury instruction regarding relationship evidence. Appellant's trial counsel neither objected to using the jury instruction on relationship evidence nor proposed alternative language for that jury instruction. By properly issuing cautionary instructions on relationship evidence at the appropriate times, the district court lessened the probability of undue weight the jury would give to the relationship evidence.

We conclude that the probative value of the relationship evidence presented at trial outweighed any unfair prejudice against appellant. The district court did not abuse its discretion in admitting relationship evidence in this case.

**Affirmed.**

---

given, the jury would have been given further reason to consider the relationship between appellant and the victims. CRIMJIG 2.07 instructs the jury that the evidence "is being offered for the limited purpose of demonstrating the nature and extent of the relationship between the defendant and *[the victim] (and) (or) other (family) (household) members.* . . ." 10 *Minnesota Practice*, CRIMJIG 2.07 (2015) (emphasis added).

**RANDALL**, Judge (dissenting)

The majority concludes that the probative value of the relationship evidence outweighed any unfair prejudice. I disagree. There is a strong possibility that the admission of this evidence significantly influenced the jury's verdict in an unfair way. It was offered to show "conformity" and "bad character," and that is the way the jury took it. "Conformity" evidence and bad-character evidence are inadmissible in a "relationship" case. *See* Minn. Stat. § 634.20 (2014); *see also* 10 *Minnesota Practice*, CRIMJIG 2.07 (2015). There is nothing in the statute and jury instruction about conformity. I would reverse.

The state presented several instances of relationship evidence involving N.E. and her sister R.E.: (1) testimony that appellant physically assaulted N.E. and forced her to engage in fellatio when she was in kindergarten; (2) testimony that appellant threatened to send N.E. to boarding school if she refused to have sex with him; and (3) testimony that appellant had sex with R.E. when she was in seventh grade. The relationship evidence involving R.E. included several incidents in which R.E. described appellant touching her vagina and one incident in which he attempted to anally rape her while threatening her with a knife. Although the sexual conduct involving R.E. and N.E. meets the definition of relationship evidence, *see* Minn. Stat. § 518B.01, subd. 2(a)(3) (2014), that does not mean the evidence is automatically admissible. Relationship evidence should be excluded if "the probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue

delay, waste of time, or needless presentation of cumulative evidence." Minn. Stat. § 634.20.

Appellant challenges the relationship evidence as to both R.E. and N.E. The major problem with admitting the relationship evidence involving R.E. is that it was severed from the trial on the count involving N.E. Appellant was originally charged in one complaint with first- and second-degree criminal sexual conduct involving R.E. and one count of second-degree criminal sexual conduct involving N.E. The district court granted appellant's motion to sever the counts involving R.E. from the trial of criminal sexual conduct involving N.E. because the offenses were not related. *See* Minn. R. Crim. P. 17.03, subd. 3(1)(a) (providing that the district court must sever offenses or charges if they are not related); *see also State v. Ross*, 732 N.W.2d 274, 278 (Minn. 2007) (clarifying that "related" means part of the same behavioral incident). If the district court refuses to sever charges, the reviewing court uses a *Spreigl* framework to determine if a defendant was unfairly prejudiced by the refusal. *See Ross*, 732 N.W.2d at 280. In other words, *if* evidence of the other crimes would have properly been admitted as *Spreigl* evidence in the trial of the other offense, *then* the refusal to sever the charges is harmless. *See State v. Profit*, 591 N.W.2d 451, 460 (Minn. 1999). But in this case the motion to sever was granted, and yet, the "severed charge" came in as relationship/*Spreigl* evidence in the trial involving N.E. as a victim. The district court admitted the very evidence involving R.E. that provided the reason for severing the trials in the first place!

The second problem is that any probative value the conduct involving R.E. had was "substantially outweighed by the danger of unfair prejudice" and the "needless presentation

D-2

of cumulative evidence." Minn. Stat. § 634.20; Minn. R. Evid. 403 (providing for exclusion of relevant evidence where probative value is "substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence"). "Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." *State v. Kennedy*, 585 N.W.2d 385, 392 (Minn. 1998). The Minnesota Supreme Court has "recognized the inherent value of evidence of past acts of violence committed by the same defendant against the same victim." *State v. Williams*, 593 N.W.2d 227, 236 (Minn. 1999). At trial, Appellant denied that the sexual conduct occurred and argued N.E. had a motive to fabricate based on an incident that occurred at school and the threat that she would be sent to boarding school as a consequence. The state argues that testimony that appellant sexually abused N.E. when she was in kindergarten and threatened to send her to boarding school if she refused to have sex with him provided context for the relationship evidence from which the jury could judge N.E.'s credibility.

Relationship evidence can only be properly admitted if its probative value is not substantially outweighed by the danger of unfair prejudice and the evidence involves domestic conduct. Minn. Stat. § 634.20. The majority focuses on "similar conduct." An earlier version of section 634.20 provided for the admissibility of "[e]vidence of similar conduct," which includes "domestic abuse." *See* Minn. Stat. § 634.20 (2006); *see also State v. McCurry*, 770 N.W.2d 553, 559, 561 (Minn. App. 2009) (concluding statutory relationship evidence is only admissible when the state charges a crime involving domestic abuse), *review denied* (Minn. Oct. 28, 2009). But the statute has been amended and now

provides for "[e]vidence of domestic conduct." 2013 Minn. Laws ch. 47, § 7, at 208. In treating the relationship evidence as evidence of "similar" conduct, the majority treats relationship evidence as the same thing as if appellant "acted in conformity" with his prior conduct.

> The past incidents between N.E. and appellant and R.E. and appellant are highly probative because they show evidence of similar conduct. Appellant's conduct is relevant because he used his authority as stepfather in the abuse of R.E. and of N.E. Evidence offered by R.E. regarding her abuse as a middle-school-age child is relevant because, at the time the abuse at issue occurred, N.E. was a middle-school-age child. The testimony concerning appellant's use of threats to convince N.E. and R.E. not to report the abuse is relevant because, here, appellant threatened N.E. with consequences if she reported his attempted abuse. We conclude that there is significant probative value in the relationship testimony of both N.E. and R.E.

In effect, the state "*Spreigl*ed" the relationship evidence involving R.E. into the trial and the instructions to the jury were along *Spreigl* lines, and yet this case proceeded without any benefits of *Spreigl* safeguards. Before *Spreigl* evidence can be admitted, there is a five-step process requiring the state to give notice of its intent to admit the evidence, to clearly indicate what the evidence is offered to prove, to establish clear and convincing evidence that the defendant participated in the prior act, to establish that the evidence is relevant and material to an issue in the case, and the probative value of the evidence must not be outweighed by its potential prejudice. *State v. Ness*, 707 N.W.2d 676, 686 (Minn. 2006). The state is not required to provide notice or prove clear and convincing evidence when seeking to admit relationship evidence. *State v. Meyer*, 749 N.W.2d 844, 849 (Minn.

D-4

App. 2008). Had the evidence involving R.E. been subject to *Spreigl* analysis it would likely not have been admitted given the district court's decision to sever these charges for trial.

The third problem with admitting the relationship evidence in this case is even more compelling – the state did not need evidence of appellant's conduct involving R.E. to provide context for his relationship with N.E. "[W]hen considering admissibility, the district court is not required to independently consider the state's need for such evidence as 'the need for section 634.20 evidence is naturally considered as part of the assessment of the probative value versus prejudicial effect of the evidence.'" *State v. Word*, 755 N.W.2d 776, 784 (Minn. App. 2008) (quoting *State v. Bell*, 719 N.W.2d 635, 639 (Minn. 2006)). The Supreme Court has instructed that the presence of other evidence on the same point may render relevant evidence inadmissible based on unfair prejudice. *See Old Chief v. United States*, 519 U.S. 172, 179, 117 S. Ct. 644, 650 (1997) (interpreting Federal Rule of Evidence 403). Given the evidence concerning appellant's prior sexual conduct involving N.E., evidence regarding appellant's sexual conduct involving R.E. was far more prejudicial than probative. It was unnecessary and cumulative.

The relationship evidence involving R.E. was highly prejudicial because the sexual conduct involving R.E. was more frequent and more violent than that involving N.E. Unfair prejudice is "evidence that persuades by illegitimate means, giving one party an unfair advantage." *Bell*, 719 N.W.2d at 641. The evidence involving R.E. encouraged the jury to convict appellant to punish him for his conduct involving R.E., and to convict him based on his propensity to engage in sexual misconduct with his stepdaughters. *See Old*

*Chief*, 519 U.S. at 180-82, 117 S. Ct. at 650-51 (discussing the danger of unfair prejudice from propensity evidence). "Although . . . 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance." *Id.* at 181, 117 S. Ct. at 650 (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir., 1982)). The evidence involving R.E. was unfairly prejudicial propensity evidence used to persuade the jury that appellant acted in conformity with his prior conduct involving R.E. and abused N.E. The district court abused its discretion in admitting the relationship evidence involving R.E.

Appellant argues that the wrongly admitted relationship evidence played a prominent part in his trial and significantly affected the verdict. I agree. Appellant is entitled to a new trial. "When the district court has erroneously admitted other-acts evidence, this court must determine whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *Ness*, 707 N.W.2d at 691. Without relationship evidence involving R.E. in the current case, the only evidence remaining would be N.E.'s testimony about what happened in eighth grade, her relationship with appellant, and appellant's testimony denying what happened when N.E. was in eighth grade. Based on the scant record, without evidence of sexual conduct involving R.E., there is a reasonable possibility that the erroneous admission of relationship evidence significantly affected the verdict.

Appellant argues that the evidence of the sexual conduct involving R.E. was so "prominently presented" from the opening statement through the closing argument that it

implicated his right to a fair trial. I agree. The relationship evidence was admitted through compelling live testimony by N.E. and R.E. and through the audio recording of N.E.'s police interview and in closing arguments. It was also mentioned prominently multiple times during the trial. Because allegations of sexual abuse are so inherently prejudicial, there can be no reasonable possibility that the admission of this relationship evidence involving R.E. did not significantly affect the jury's verdict. *See State v. Jahnke*, 353 N.W.2d 606, 610 (Minn. App. 1984) (recognizing that sexual abuse cases "inescapably evoke an emotional reaction" in jurors).

As the majority points out, the district court informed the jury that the limited purpose of the evidence was "to assist [the jury] in determining whether [appellant] committed the act with which he's charged, not for any other purpose. It would be improper for [the jury] to use it for another purpose. It's not to prove the character of [appellant] or that he acted in conformity with it."[5] The majority is persuaded that the cautionary instructions mitigated any prejudice. I disagree. I ask, for what other reason did the state offer it than to show conformity? The entire nature of all the relationship evidence was to convince the jury of "conformity," meaning since appellant had done it before, he had done it this time.

---

[5] The district court gave cautionary instructions. The district court gave the instruction in CRIMJIG 2.01, which is for *Spreigl* evidence, and advised the jury that "[t]his evidence is not to be used to prove the character of the defendant or that defendant acted in conformity with such character." 10 *Minnesota Practice*, CRIMJIG 2.01 (2015). Proper cautionary instruction upon receipt of section 634.20 relationship evidence is in CRIMJIG 2.07. But the jury "heard the instructions given."

Jurors are lay people from the community selected at random to bring their collective experience to a criminal trial in deciding the facts. Criminal defense lawyers, prosecutors, professors of law, and learned judges do not sit on juries in criminal cases. So as a collective group, we legal people can repeat and mouth cautionary instructions. Juries from their collective life experiences know better. Their collective intuition mirrors the following: "[T]he actions of men [are] the best interpreters of their thoughts." John Locke, *An Essay Concerning Human Understanding, in I The Works of John Locke* 34 (London, Rivington 1824). "Most of the heartbreak that life contains is a result of ignoring the reality that *past behavior is the most reliable predictor of future behavior*." Gordon Livingston, M.D., *Too Soon Old, Too Late Smart* 8 (Da Capo Press 2004) (emphasis in original).

So we tell the jury that the relationship/*Spreigl*-type evidence cannot be used to show that the defendant acted in conformity therewith. We give the jury detailed instructions cautioning them to ignore their collective life experiences and common sense. Not surprisingly, the jury views the court's instructions as Mr. Bumble did in Charles Dickens's classic, *Oliver Twist*. There is the following conversation between a Mr. Brownlow and Mr. Bumble:

> [Mr. Brownlow said,] "You were present on the occasion of the destruction of these trinkets, and indeed are the more guilty of the two, in the eye of the law; for the law supposes that your wife acts under your direction."
>
> "If the law supposes that," said Mr. Bumble, . . . "the law is a ass—a idiot."

Charles Dickens, *The Adventures of Oliver Twist* 197 (London, Chapman & Hall 1871).

The last argument for the state is that "cautionary instructions" were given, and they can cite a host of cases that say that is "good medicine" and makes everything better. That is a legal fiction we continue to express, even though we know better. In the seminal case of *State v. Caldwell*, Supreme Court Justice Douglas Amdahl, discussing the argument that cautionary instructions could help overcome evidence that was improperly admitted stated,

> [w]e noted in *State v. Reardon*, 245 Minn. 509, 73 N.W.2d 192 (1955)[,] that where 'the impact of the prejudicial remark may be such as to impart to the minds of the jury substantial prejudicial evidence not properly a part of the case, it is taking too much for granted to say its effect can be moved by an instruction from the court. * * * The naïve assumption that prejudicial effects can be overcome by instructions to the jury, * * * all practicing lawyers know to be unmitigated fiction.' We therefore view the prosecutor's conduct as a material factor in our decision to grant appellant a new trial.

322 N.W.2d 574, 590-91 (Minn. 1982) (quoting *Reardon*, 245 Minn. at 513, 73 N.W.2d at 195) (other quotation omitted).

We could be honest with juries, and tell them when the relationship/*Spreigl* evidence is admitted, that they could use it as substantive evidence on whatever issue they want. I suspect that is exactly what they are doing anyway. But we are not about to be that honest, because it would be too much of an infringement on the due process rights criminal defendants are guaranteed in the United States Bill of Rights and Minnesota constitution. *See* U.S. Const. amends. V, VI; Minn. Const. art. I, §§ 6, 7.

So what is the answer? The answer is to scrutinize carefully relationship/*Spreigl* evidence and not admit it whenever there is the least bit of a close question. Do not admit it when the state's proffered reason is context, probative value, motive, intent, etc., when

the evidence is clearly being offered to show that the defendant's present charges are in conformity with his past acts. The state is not prejudiced when their alleged relationship evidence is not admitted. It always has the defendant it has, the evidence it has, and the charges it has. There is no need to let the state go back years prior and bring in bad facts that were either not investigated at the time or were, but then not charged. If those acts had been charged at the appropriate time, meaning when they were committed, the defendant would have had a fair trial on the charges and been found guilty or acquitted. If found guilty, the state has a right to offer that conviction later under impeachment by prior conviction. Minn. R. Evid. 609(a). If the defendant was acquitted, it becomes moot as those past acts are not admissible for any reason. *State v. O'Meara*, 755 N.W.2d 29, 34-35 (Minn. App. 2008).

The state can only offer impeachment by prior conviction if the defendant takes the stand on his own behalf. The defendant has the choice to give up that right, and that prevents the impeachment by conviction evidence from coming in. With relationship/*Spreigl* evidence, that evidence comes in whether the defendant takes the stand or not. Why do we reward the weaker evidence but surround the stronger evidence, impeachment-by-conviction, with the safeguard of allowing the defendant to make a choice not to let it in? The credibility of relationship/*Spreigl* compared to the credibility of impeachment by conviction evidence is nil! A conviction of record allows the trial judge and the parties to take judicial notice that the defendant had a fair trial with constitutional safeguards, the assistance of counsel, the presumption of innocence, and other related safeguards. If it is a jury trial, the guilty verdict is not of record until the district court judge

D-10

accepts it and records it in the judgment book. *See* Minn. Stat. § 609.02, subd. 5 (2015) (defining conviction). If it is a plea of guilty, the law and the rules of criminal procedure require that the attorneys and the district court ensure that the defendant understands exactly what the charge is and what he is pleading guilty to. *See* Minn. R. Crim. P. 15.01, subd. 1 (listing requirements to ensure validity of a felony guilty plea). Impeachment by conviction also presumes several antecedent safeguards. *See* Minn. R. Evid. 609; *see also State v. Jones*, 271 N.W.2d 534, 537-38 (Minn. 1978) (listing five factors to consider when evaluating the admissibility of a prior conviction). *Spreigl* evidence at least requires that the prior act meet a clear and convincing standard. *See State v. Bolte*, 530 N.W.2d 191, 196-97 (Minn. 1995) (listing procedural safeguards for admitting *Spreigl* evidence). But relationship evidence, which is any past act, uninvestigated, or if investigated, found not worthy of a criminal charge, is allowed in willy-nilly with no such safeguards. Impeachment by conviction also has a controlling statute of limitations and a time limit to guard against staleness. *See* Minn. R. Evid. 609(b) (providing that evidence of a conviction generally is not admissible if more than ten years has elapsed since the date of conviction or release from confinement, whichever is later). There is no time limit on past conduct for relationship evidence. It can be about incidents decades ago.

Why do we allow the state to "effectively charge" a criminal defendant with the past and add that to the present charge? Past bad-acts evidence has no procedural safeguards except a so-called "limiting instruction," which I alluded to earlier as an "unmitigated fiction." *Reardon*, 245 Minn. at 513, 73 N.W.2d at 195.

On the facts and the evidence presented at this trial, I would reverse and remand for a new trial.